28 C.C.P.A. (Patents)

**In re BRITTON.**

**Patent Appeal No. 4373.**

Court of Customs and Patent Appeals.

Nov. 8, 1940.

Arthur E. Paige, of Philadelphia, Pa. (Frank E. Paige, of Philadelphia, Pa., of counsel), for appellant.

W. W. Cochran, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for the Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

LENROOT, Associate Judge.

This is an appeal from a decision of the Board of Appeals of the United States Patent Office, affirming a decision of the examiner rejecting all of the claims of appellant's application for a patent, 18 in number, for lack of patentability over the cited prior art.

Claims 1 and 5 are illustrative and read as follows:

"1. An infusible heat insulating plastic composition including respectively approximately four and three parts of oxid and chlorid of the same metal, approximately two and one-half parts of inert cellular material, approximately one-fourth part of glue, and approximately three and one-half parts of water."

"5. A method of forming a heat insulating plastic composition which consists in mixing approximately four and three parts of oxid and chlorid of the same metal, in a finely comminuted and dry state, with approximately two and one-half parts of finely comminuted inert cellular material in a dry state and approximately one-fourth part of glue in a dry state; then mixing approximately three and one-half parts of water therewith, and allowing the mixture to stand for approximately ten minutes, until manifest chemical reaction of its constituents has ceased, before disposing the plastic composition thus formed into the form in which it is desired that it shall set."

The references cited are:

Bruening, 778,529, December 27, 1904.
Sabine, 1,458,631, June 12, 1923.
Santos, 1,464,588, August 14, 1923.

The subject matter of appellant's application is described by the examiner as follows:

"The invention relates to a composition of matter for heat insulation and a process for producing the same. The composition is produced by first making a dry mixture of: 4 parts of oxide of a metal preferably magnesium or zinc; 3 parts of chloride of the same metal; 2½ parts of an inert cellular material, preferably cork which has been heat treated to remove the more volatile constituents; ¼ part of a water miscible adhesive, preferably glue.

"The above mixture may be stored and shipped in the dry state and upon mixture with water at the point of use there is a manifest foaming of the mixture. After standing for about 10 minutes the mixture is applied as a heat insulating plaster or wall board. The foaming gives the finished composition a low specific gravity and in consequence a high insulation value."

The patent to Sabine discloses a porous plastic composition for application to walls, etc., which comprises magnesium chloride, magnesium oxide, glue, water, and granulated iron blast furnace slag. The patent states:

"Among the objects of my invention are to provide a plaster of such nature that it may be applied to walls, ceilings, and the like, with ordinary plastering tools, and which when hardened will absorb

sound to a greater degree than possible with the plasters heretofore known; * * *

"For a bonding material, I use a well known material known as Sorel cement, consisting of a mixture of a solution of magnesium chloride and magnesium oxide. When mixed to form a paste, these materials will harden into an extremely hard and tenacious solid. There are other known methods of producing the compound thus formed, by the use of other salts of magnesium, of which I may avail without departing from the spirit of my invention. To the solution of magnesium chloride is added a very small amount of glue, gelatine, or other material, which with water will form a colloidal solution. One per cent by weight of glue is sufficient for the purpose. The addition of even this small amount of colloidal material is of importance in securing the desired result. The presence of the glue or other colloidal material causes a marked foaming action in the mixing of the mortar. This action produces a wet mixture of the proper consistency to be handled with plastering tools, and yields a hardened product sufficiently porous to be highly absorbent of sound.

"As an aggregate, I preferably use the granulated slag from iron blast furnaces. This material is prepared by passing the molten slag from the furnace directly into cold water. The expansive force of the steam thus formed, breaks the slag into small particles, and the cellular structure of the slag is such that these particles have each numerous sharp projecting points. * * *

"As an instance of the employment of the foregoing materials, the following example of their use in the preparation of a sound absorbing plaster is given.

"To a solution in water of magnesium chloride of density 20° Baumé, is added 1% by weight of glue. Equal volumes of the resulting mixture and dry magnesium oxide are mixed to form a thin paste. Into this paste, four volumes of the granulated slag is thoroughly worked."

The patent to Bruening states:

"My invention relates to insulating materials and process for producing the same.

"The object of my invention is to produce a material which is a non-conductor of heat, cold, and sound, is waterproof, and non-expansible and non-contractible when subjected to the action of heat, cold, and water. The material so produced is capable of use in all classes of construction where insulation from the elements specified is desirable or necessary—as, for instance, in refrigerators and like constructions used in breweries, in the walls of buildings where even temperatures are necessary or desirable to be maintained, between the floors of buildings where it is desirable to deaden concussion or lessen sound, or, in fact, any construction in which insulation is necessary or desirable.

"The material produced comprises cork, treated as hereinafter described incorporated in cement or coalescing compound consisting of tar or pitch, comminuted or ground flint or silica, ground clay, comminuted or ground feldspar, oil of rosin, and litharge mixed in the proportions and treated as hereinafter specified. In the production of said material the cork—i. e., the granules or waste cork of any form —is first reduced to any desirable-sized particles, dependent on the density or closeness of texture of the material required. The cork is then subjected to a drying process by heat in any suitable vessel sufficient to drive off all the volatile matter that may be contained therein. I find that by subjecting the cork to heat ranging from 300° to 400° Fahrenheit during approximately fifteen minutes not only drives off such volatile matter, but also greatly reduces the elasticity or resiliency of the cork and reduces it to a condition or quality highly desirable in the production of this insulating material. * * * *"

While the Office action of the examiner includes Santos as one of the references, the Santos patent is not mentioned in the statement of the examiner, or in the decision of the Board of Appeals, and as we are of opinion that it has no relevancy to the issues before us it will not be further referred to.

All of the claims were rejected by the examiner primarily on the patent to Sabine, in view of the patent to Bruening, the examiner holding that to substitute the finely ground cork disclosed by Bruening for the small particles of slag described by Sabine is without patentable significance, and that the proportions of ingredients set forth in all of the claims (except claims 16 and 17, which state none) are not critically different from the proportions shown by Sabine.

The first question for consideration is whether or not the substitution of granulated cork disclosed by Bruening for the

granulated slag from iron blast furnaces disclosed by Sabine involves the exercise of the inventive faculty.

Bruening states that his composition, one of· the principal ingredients of which is granulated cork, is "a non-conductor of heat, cold, and sound."

Sabine's composition, as stated in his patent, is sound absorbing.

In view of the fact that Bruening's composition is stated in his patent to be a non-conductor of heat, cold and sound, and Sabine's composition is stated in his patent to be a sound absorbent, we think it would be obvious to one skilled in the art, desiring a heat insulating composition, to substitute for the granulated slag from iron blast furnaces, disclosed by Sabine, the granulated cork disclosed by Bruening. We would observe in this connection that the examiner held that the composition disclosed by Sabine, with the granulated slag ingredient, would necessarily function as a heat insulation. While appellant's counsel in their brief challenge this finding of the examiner, we note that Sabine relies upon the porosity of his composition to absorb sound, and appellant in his application also relies upon the air cells of his composition as a means of insulation against heat.

■ It follows from the foregoing that we are in agreement with the Patent Office tribunals that there would be no patentable significance in substituting the granulated cork disclosed by Bruening for the granulated slag disclosed by Sabine.

The next question is whether the proportions of ingredients set forth in most of the claims, which admittedly differ from the proportions named in the Sabine patent, render such claims patentable. Upon this point, with respect to the relative proportions by volume set out in said claims, the examiner stated: "The volume of the binder ingredients will be 7.60 and of the filler 20.8. Such a proportion does not appear to be critically different from the proportions shown by Sabine on page 2, lines 63 to 70, viz. 2 parts of binder to 4 parts of filler by volume."

The above quoted statement with respect to proportions is not challenged by appellant, but he does challenge the statement that his proportions are not critically different from the proportions shown by Sabine.

Upon this point the decision of the Board of Appeals stated: " * * * The proportions recited are within the purview of the skilled artisan as we do not understand that the proportions are critical."

Appellant's counsel in their brief state: "The Board erred in the conclusion that; 'The proportions recited are within the purview of the skilled artisan as we do not understand that the proportions are critical.' The proportions to which applicant's claims are specifically limited are 'critical' in that they are necessary to produce his products exemplified by 'Britton Exhibit A', which are characterized by extreme porosity, a specific gravity of approximately .35 and a heat insulating factor of approximately .35; to which claims 15, 16, and 17 are specifically limited."

In said brief of appellant's counsel we also find the following: "Those proportions are *preferable* for Appellant's plastic compositions which include *Cork,* or other *organic* cellulosic material such as Bagasse, but different proportions are preferable if the filler material is of a different character. * * *"

That the above quotations are inconsistent with each other is clear. Of course if the proportions named in the claims are merely "preferable" as stated in the last quotation, they could not be "critical" as stated in the first paragraph.

■ It is well established that, in order for given proportions in a composition to be critical, as compared with the proportions used in a composition constituting prior art, they must produce a difference in kind rather than degree. In re Richter, 53 F.2d 525, 19 C.C.P.A., Patents, 756.

■ That the proportions named in the claims before us are not critical is evidenced by the following statement in appellant's application: "Although ·I have described what I have found to be highly desirable ingredients and methods of utilizing them; I do not desire to limit myself to the specific materials, proportions, or method of utilizing the same herein set forth, as it is obvious that various modifications may be made therein without departing from the essential features of my invention, as defined in the appended claims."

In the case of In re Ayres, 83 F.2d 297, 301, 23 C.C.P.A., Patents, 1118, we said: "Certain of appellant's claims are limited to percentages which may differ in degree

from the percentages taught by the reference patent, but appellant does not teach that his specific percentages are critical. His specification says: 'While the proportions in the specific examples are found to be highly advantageous, larger percentages can be used and particularly with other inhibitors.' " See also In re Swingle et al., 92 F.2d 709, 25 C.C.P.A., Patents, 706.

In view of the statement in appellant's application above quoted, we have no hesitation in agreeing with the view of the Patent Office tribunals that the proportions set forth in the claims before us have no patentable significance because of the proportions set out in the Sabine patent, and in this connection we would observe that there is nothing in said Sabine patent to indicate that the proportions therein named are critical.

With respect to claims 5, 6, and 7 the examiner further stated: "Claims 5, 6 and 7 recite the method whereby the oxide and chloride, the filler and the glue are mixed in the dry state before adding water. Claim 18 is directed to the aforesaid dry mixture. It is not seen that any new or unexpected results will obtain by such a method as claimed. It is well known that the binder ingredients require water to produce an adhesive material and it is believed obvious that the permanent ingredients could be mixed in a dry state and water added at the required time to produce a plastic mass."

The Board of Appeals did not specifically refer to this finding of the examiner, but the general affirmance of the decision of the examiner includes an affirmance of all of the reasons given by the examiner.

The reasons of appeal before us make no reference to the statement of the examiner last above quoted, and hence we must conclude that appellant was in agreement therewith. We may say, however, that we have no doubt of the correctness of the quoted statement of the examiner.

There are five physical exhibits in the case before us, A, B, C, D-Bruening, and D-Sabine. There are two affidavits in the record with respect to "Exhibit D-Bruening * * *," and two affidavits with respect to "Exhibit D-Sabine * * *," showing how said exhibits were prepared. There is nothing in the record showing how Exhibits A, B, and C were prepared.

Appellant's brief states:

"The affidavits of Andrea Kean and Mahlon Heller, Jr. both dated April 29, 1938 and of record re appellant's application Serial No. 163,954 filed September 15, 1937 for Letters Patent of the United States 2,182,535 granted to appellant December 5, 1939, are evidence as to how Britton Exhibits A and B were made.

"The affidavits of John Guy Britton, and Charles Pegues respectively executed on March 1, 1939, and of record re Serial No. 163,954 are evidence as to how Britton's Exhibit C was made.

"Note: The Board of Appeals considered Exhibits A, B and C and the four affidavits relating to them before rendering the decision from which the present appeal was taken."

From the above statements it appears that the affidavits referred to therein were filed in connection with another application, and not in connection with the application before us. They are not included in the record before us, and of course we cannot consider them.

We would also observe that a certain report of the examiner is not contained in the record. With respect to this matter appellant's brief states: " * * * In the "Examiner's report on affidavits filed in Paper No. 13" (which has been omitted from the Transcript of Record) the Primary Examiner states 'the Exhibit D appears to have been made as described in the aforesaid affidavits.' * * *"

Obviously it was improper to state what the report contained. If appellant desired consideration of this report, the report should have been included in the record on appeal.

Appellant's brief is replete with statements of fact respecting the commercial success of appellant's composition. There is nothing in the record upon this point, and such statements should not have been included in appellant's brief.

Our jurisdiction is limited to a consideration of the "evidence produced before the commissioner." R.S. § 4914, 35 U.S.C.A. § 62.

After the decision of the Board of Appeals here appealed from, appellant entered a motion to reconsider the decision of the board, and affidavits in support of such motion were submitted. Notice of

appeal to this court was filed on September 23, 1939, which was before said motion was decided. On October 6, 1939, the board remanded the case to the Primary Examiner for the consideration of said affidavits. On October 18, 1939, the examiner filed his supplementary report, and on October 24, 1939 the board in a decision stated that it adhered to its former decision.

 On October 28, 1939, appellant filed certain other affidavits which are contained in the record, and a physical exhibit, Exhibit E. These matters were never considered by any Patent Office tribunal, and of course we cannot, under our limited jurisdiction, consider them. Whether the Board of Appeals had any jurisdiction, after the notice of appeal to this court was filed, to give any further consideration to this case while the appeal to this court was pending, we are not called upon to decide here, for our decision upon that point would in no wise affect our conclusion upon the merits of the case.

For the reasons hereinbefore stated, the decision of the Board of Appeals is affirmed.

Affirmed.