31 C.C.P.A. (Patents)

## In re LEE et al.
### Patent Appeal No. 4779.

Court of Customs and Patent Appeals.

Dec. 7, 1943.

Charles K. Davies, Jr., of Washington, D. C., for appellant.

W. W. Cochran, of Washington, D. C. (R. F. Whitehead, of Washington, D. C., of counsel), for the Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

LENROOT, Associate Judge.

This is an appeal from a decision of the Board of Appeals of the United States Patent Office affirming a decision of the Primary Examiner rejecting claims 18 to 24, inclusive, and 26 to 28, inclusive, of appellants' application for a patent.

Claim 25 was also rejected by the Primary Examiner, but that rejection was reconsidered by him and the claim was held allowable.

The claims on appeal were rejected upon the ground of lacking patentability over the cited prior art, and also upon the ground that there was no patentable distinction between said claims and the claims of a patent issued to appellants, No. 2,197,272.

All of the claims are method claims. Claims 18, 20, and 26 are illustrative of the claims before us and read as follows:

"18. The herein described process for the extraction and recovery of silver and copper from refractory sulphides which comprises calcination to form silver sulphate, under conditions allowing the maximum elimination of volatile impurities and the conversion of copper and other associated constituents to their higher oxide forms, in combination with the leaching of the calcine in an acidified solution containing an oxidizing agent, maintaining the oxidizing agent to hold both of the solids and dissolved salts in their states of oxidation."

"20. The herein described process for the extraction and recovery of silver and copper from refractory materials by leaching in *acidified* solutions containing an oxidizing agent, maintaining the oxidizing agent to hold both the solids and dissolved salts in their higher states of oxidation."

"26. The herein described process for the extraction of silver and copper from refractory materials in which the solids are entered into a leach system against neutralized solvent for the solution of the bulk of the silver and the solids advanced countercurrently to a flow of partially neutralized solvent containing an oxidizing agent, maintaining the oxidizing agent to hold the solids and dissolved salts in their higher states of oxidization, the proportion of solids to solution being such as to effect neutralization and purification of the solvent, separating the purified pregnant solutions for the recovery of values and advancing the partially leached solids countercurrently to a flow of regenerated solvent in which an oxidizing agent is maintained to hold the solids and dissolved salts in their higher states of oxidation, the volume of solvent flow being such as to allow free acid in the final pulp, washing and deliquoring the acid pulp, and conveying the partially neutralized solvent for neutralization and purification by agitation in the cycle with partially leached calcine."

718

The references relied upon in addition to appellants' patent above cited are:

Smith et al., 617,911, January 17, 1899

Hybinette, 1,122,759, December 29, 1914.

Appellants' alleged invention is concisely described by the Primary Examiner as follows: "Applicants' invention relates to a process of treating ores for the extraction and recovery of silver and copper, and is alleged to be particularly suited to the treatment of ores not amenable to either direct lead or copper smelting operations, such as silver and gold bearing lead-copper sulfides, containing varying proportions of iron, antimony, arsenic, zinc, bismuth, selenium, tellurium and other objectionable impurities. Specifically applicants roast the ore and then leach the roasted ore in neutral or acid solutions containing an oxidizing agent so as to maintain an excess ferric ion concentration over ferrous ion concentration, this condition being favorable to the solution of the silver content of the ore. From the solution so produced the silver is precipitated by copper, and the copper recovered by electrolysis."

The patent to Smith et al. discloses a process for the treatment of copper ores. We quote therefrom as follows: "The invention is directed more particularly to the treatment of copper ores, and is equally applicable whether a minor percentage of silver be present in the ore or not. In preferred form the improvement designs to convert the metals into sulfates by digesting the ores under heat and pressure with a suitable oxidizing agent in presence of free sulfuric acid and after precipitating the silver, if any, by means of copper filings subjecting the solution to electrolysis. Under such action the copper and the oxidizing agent are for the most part recovered. The copper depositing on the cathodes, while the oxidizing agent is regenerated at the insoluble anodes and in proper state for reuse precipitates from the electrolyte. The residue of the metallic salts, with free sulfuric acid, constituting the bulk of the spent electrolyte, is later evaporated, the salts crystallized out and calcined or otherwise treated to restore the contained oxidizing agent to active condition for reuse, while the sulfuric acid after crystallization of the salts remains as a mother-liquor in readiness to be employed anew at the digester. The method proceeds in cycle—that is, the oxidizing agent and sulfuric acid, which effect the solution of the metallic elements of the ore at the leaching stage, are both ultimately recovered at marked saving, to be employed over again in digesting fresh batches of ore."

The patent to Hybinette discloses a method of extracting copper from ores in which the ore is calcined in order to render the metal values soluble in the leaching solution. The method disclosed also regulates the time and temperature of roasting to properly oxidize the metallic constituents of the ore.

The patent to Lee et al. (appellants) relates to a process for extracting silver from ores, concentrates, or other materials.

With respect to the disclosure of this patent, the examiner in his statement said: "The claims allowed to applicants in this patent are directed to the same essential combination of steps; namely, the calcination of a sulfide ore containing silver and copper in order to convert the silver to the sulfate and the associated constituents to their higher oxide forms and the subsequent leaching of such calcine in an acid solution containing an oxidizing agent, the agent being maintained in amount sufficient to hold both the solids and dissolved salts in their higher oxide states (cf. claims 3 and 4). The dissolved silver is also recovered by precipitation as sponge (claim 6)."

Claims 20 and 24 are very broad and merely embrace leaching the copper-silver ore with an acidified solution containing an oxidizing agent and maintaining the oxidizing agent to hold both the solids and dissolved salts in their higher states of oxidization. These claims were rejected by the examiner on Smith et al. alone. The Board of Appeals approved this ground of rejection and in its decision pointed out in detail the various steps disclosed by Smith et al. corresponding to the process set forth in claims 20 and 24.

It seems to us that it is too clear for argument that these claims are fairly anticipated by Smith et al.

Claims 18 and 19 are similar to claims 20 and 24 except that they include the preliminary step of calcination. They were rejected by the examiner upon Smith et al. in view of the patent to Hybinette. Appellants do not dispute that Hybinette discloses the step of calcining copper ores. With respect to these claims the Board of Appeals, in its decision, stated: "Claims

18 and 19 refer to the preliminary step of calcination. It is regarded as merely conventional in the metallurgy of silver and copper to preliminarily roast sulphide ores to convert the metals into oxide form. This is disclosed by Hybinette in similar and fully equivalent relation. The rejection of claims 18 and 19 on Smith in view of Hybinette is accordingly affirmed."

We are very clear that in view of the reference Hybinette the step of calcination in the claims does not render them patentable.

With respect to claim 21 the board said: "Claim 21 merely requires in addition that countercurrent principle be employed in the leaching step. While the examiner has not supplied a definite citation to disclose counter-current plan of leaching in this exact relation, it is regarded as merely a matter of public knowledge and apparently not controverted by applicant that the counter-current principle of leaching is well-known as widely used in the chemical arts. Invention is not involved in this claim over Smith merely on the difference of employing a counter-current or continuous method of leaching rather than the possibly intermittent plan disclosed by Smith."

Appellants, in their brief, do not dispute the above quoted statement of the board that the counter-current plan of leaching is a matter of public knowledge and is well known and widely used in the chemical arts. Therefore we are in agreement with the views of the Patent Office tribunals that the element of the counter-current principle, as set forth therein, does not aid patentability thereof, and hold that the claim was properly rejected for the same reasons that claims 18 and 19 were rejected.

With respect to the remaining claims, they were all rejected upon Smith et al. in view of Hybinette. These two patents disclose all of the elements of these claims other than the element of the counter-current principle herein before discussed, and we are in agreement that none of the claims are allowable over Smith et al. in view of Hybinette. To combine the steps disclosed by Smith et al. with those disclosed by Hybinette in the relation as set forth in the involved claims would, as held by the board, produce no new or unobvious result, but would be merely "a matter of utilizing two features with the expected sum of their effects."

It follows that we find no error in the rejection of all of the appealed claims upon the cited prior art.

We are also in agreement with the Patent Office tribunals that all of the claims before us lack patentability over appellants' prior patent.

Appellants, in their brief, state:

"The same thread of invention may run through the two disclosures, it is true. But the patent disclosure covers the use of the process on silver bearing ore only. The application claims cover the process on silver and copper.

"It may be conceded that the silver process of the patent might be carried out on the silver-copper ore, but the copper would be lost. It may also be conceded that the silver-copper process might be carried out on silver bearing ore but the steps for the recovery of copper would be wasted."

Appellants' patent discloses a process for extracting silver from ores while their present application relates to substantially the same process for the extraction of silver and copper from ores containing these metals. Appellants have not pointed out to us wherein any invention was involved in applying the process of their patent for the extraction of copper in addition to silver from ores.

We are in agreement with the Patent Office tribunals that there is no inventive difference between the claims before us and the claims allowed in appellants' patent. As stated by the Board of Appeals, the difference between the claims of appellants' patent and the claims before us is a mere difference in scope of claims, and the inclusion of copper in the claims before us does not make them patentably distinct from the claims of appellants' patent.

Finally, it is urged by appellants that the Patent Office tribunals have taken an inconsistent position in this case. They state in their brief:

"Examiner argued that the claims are not patentable over Lee et al because the same inventive concept appears in both the patent and this application. Examiner further states that the patentability of the claims of the patent rests on the maintenance of the ferric ion concentration.

"If, then, the claims of the patent and the claims of this application are the same, as Examiner urges, how could the Examiner have allowed the claims of the patent over

the art of Smith et al, and Hybinette. Reversing the reasoning then, if the claims of the patent were allowable over the prior art of Smith and Hybinette, then the claims of the application are allowable over the same art.

"The Board of Appeals has therefore taken an incompatible position. If the claims of the application are the same as the claims of the patent then these claims are patentably distinguished from the prior art. If however, the claims of the application are anticipated by Smith and Hybinette, they must be different from the claims of the Lee patent. Things equal to the same thing are equal to each other."

In the first place we are not concerned here with any inconsistent positions which may have been taken by the Patent Office tribunals.

We have many times held that rejected claims cannot be allowed because the Patent Office tribunals had allowed substantially similar claims in the same application or in other applications. See In re Eitzen, 86 F.2d 759, 24 C.C.P.A., Patents, 798.

In the second place, we are not advised that the prior art cited in the instant case was also cited in appellants' application upon which their patent was issued. The examiners of the Patent Office are highly qualified for the work performed by them, but they are not infallible, and it is conceivable that sometimes relevant references may be overlooked by them.

For the reasons herein stated, the decision of the Board of Appeals is affirmed.

Affirmed.