35 C.C.P.A.(Patents)

## Application of FLETT.

## Patent Appeal No. 5412.

Court of Customs and Patent Appeals.
March 2, 1948.

Forbes Silsby and I. Harry Rosenberg, both of New York City, for appellant.

W. W. Cochran, of Washington, D. C. (J. Schimmel, of Washington, D. C., of counsel), for the Commissioner of Patents.

Before GARRETT, Presiding Judge, and HATFIELD and JACKSON, Associate Judges.

JACKSON, Associate Judge.

This appeal is from a decision of the Board of Appeals of the United States Patent Office affirming a decision of the Primary Examiner finally rejecting all of the claims, 21 to 27 inclusive, of an application for a patent, serial No. 403, 457, filed July 21, 1941, entitled "Process for the Preparation of Alkyl Aryl Sulfonates."

Claims 21, 22, 24, and 26 were rejected as unpatentable over the prior art. Claims 23, 25, and 27 were rejected as not reading on the elected species. All claims are for method.

Claim 21 is deemed representative of the subject matter claimed and reads as follows:

"21. In the manufacture of alkyl aryl sulfonates, the alkyl side chains of which are derived from petroleum distillates the lower boiling points of which are not below 80° C. at atmospheric pressure and the upper boiling points of which are not above 350° C. at 25 mm. pressure, by a process involving halogenating the petroleum distillate, condensing the halogenated petroleum distillate with an aromatic compound

selected from the group consisting of benzene, toluene, napthalene, phenol, phenetole and monochlorbenzene to form an alkyl aryl condensation product, sulfonating the resulting alkyl aryl compound and drying the solution of the sulfonate, the improvements which comprise carrying out the halogenation of the pertoleum distillate so that between about 10% and about 50% thereof remains unhalogenated and drying the alkyl aromatic sulfonate solution subsequently produced, said solution containing an appreciable amount of unhalogenated petroleum hydrocarbons from the partial halogenation of the pertoleum distillate, by exposing a large surface area thereof to a relatively high temperature for a relatively short time, whereby a solid product substantially free of unsulfonated organic impurities is obtained."

The cited references are:

Schou (British), 20,916, September 20, 1907.

Van Stone, 1,594,390, August 3, 1926.
Coltman, 1,653,390, December 20, 1927.
Lamont, 1,734,260, November 5, 1929.
Heath, 1,852,303, April 5, 1932.
Liberthson, 1,947,861, February 20, 1934.
Bertsch, 1,968,797, July 31, 1934.
Bertsch, 2,047,612, July 14, 1936.
Guenther et al., 2,220,099, November 5, 1940.
Flett, 2,196,985, April 16, 1940.
Flett, 2,223,364, December 3, 1940.
Flett, 2,233,408, March 4, 1941.
Flett, 2,247,365, July 1, 1941.
Flett, 2,283,199, May 19, 1942.

"Elements of Chemical Engineering," Badger and McCabe, (1931) pages 277 to 281.

Appellant in his brief states that the process defined by the involved claims is for the production of "a commercially successful and widely used washing, cleansing, foaming, wetting, and emulsifying agent which has many of the attributes of ordinary soaps without their disadvantages."

The patents to Liberthson, Lamont, Bertsch, Van Stone, Coltman, Heath, the British patent, and the Badger and McCabe reference all disclose the drying of different substances by drum or spray drying. The Liberthson patent discloses drum drying of sulphonates derived from petroleum. The Bertsch patent, No. 2,047,612, discloses a spray drying of alkyl sulphates and shows that by such drying unsulphonated materials are eliminated from the final product. The Flett patents (all of which issued to appellant herein) were stated by the Primary Examiner to disclose and claim the preparation of alkyl aryl sulphonates by the same general steps as are set out in the rejected claims. The examiner stated that those patents were not relied upon for the purpose of anticipation, but to show that the rejected claims are unpatentable over the claims of the patents and if they were allowed it would result in extending the monopolies already granted for the reason that the involved claims fail to define invention over the patent claims. In other words the Primary Examiner held that, should the involved claims be allowed, it would result in double patenting.

The examiner further rejected the claims as unpatentable over the patent to Guenther et al. in view of all the other auxiliary references.

It appears that appellant filed an affidavit under Rule 75 of the Rules of Practice in the United States Patent Office, 35 U.S. C.A.Appendix, for the purpose of antedating the Guenther et al. patent. The examiner held that that patent was not antedated, giving his reasons, which are not necessary to repeat, for such holding.

The examiner stated that the only issue was whether or not the steps of (a) partial chlorination and (b) drum-drying or spray drying as set out in the claims involved invention. The examiner pointed out that the Flett patent, No. 2,247,365, claims the exact principle of partial chlorination, as defined in the rejected claims, but in different language so that "the only point of departure to be considered is whether step (b) involves invention over the process already patented." The examiner held no invention to be involved for the reason that drum drying of alkyl aryl sulphonates is obvious and such technique was shown to be collectively used in the various auxiliary references.

The Board of Appeals in its decision affirmed the rejection of the claims as made

by the examiner, except for the rejection of claims 21, 22, and 24 as unpatentable over the Guenther et al. reference in view of the auxiliary references.

In its decision it was said by the board that the examiner had affirmed and appellant had not denied that he had prior patents claiming the production of a sulphonate by means of steps corresponding to the steps set out in the appealed claims, excluding the drying step. The board stated that the degree of chlorination is expressed in a different way but has the same meaning. It further stated that appellant alleged that, by subjecting the sulphonate produced from petroleum distillate chlorination to drum or spray drying so that between about 10% to 15% remains unchlorinated, a superior product is produced.

The board pointed out that appellant lays great stress upon the correlation of the degree of chlorination with the chosen method of drying, by driving off certain unsulphonated compounds as volatile matter which will produce a dried product with a higher percentage of the sought for sulphonate.

The board agreed with the examiner that it would be obvious to employ any high-temperature drying in the Flett patent; No. 2,247,365, or to follow the procedure claimed in the patent by drum drying. It pointed out that the driving off of unsulphonated compounds would not be unexpected, for the reason that it is taught in the Bertsch patent, No. 2,047,612.

In view of our conclusion, we think that appellant's patent, No. 2,247,365, is fully representative of those used in the rejection of the claim upon appellant's own patents and it is unnecessary to analyze the remaining ones.

Appellant's patent, No. 2,247,365, broadly covers the process of producing alkyl aryl sulphonates. In that process, a petroleum distillate with an average of 7 to 35 carbon atoms is chlorinated to a degree corresponding to more than 100 per cent and not more than 200 per cent of that theoretically required for monchlorination. The mixture is condensed with an aromatic compound and the condensed alkyl aryl compound then sulphonated. The claims in the patent are based upon a disclosure substantially identical with that of the involved application. The solicitor in his brief points out that in claim 2 of the patent the petroleum distillate contains from 7 to 35 carbon atoms, while the distillate in the rejected claims is defined as having a lower boiling point of 80° C. and an upper boiling point not above 350° C. He further stated that:

" * * * each [claim 2 of the patent and the definition of the petroleum distillate of the instant claims] is based upon a disclosure of the same material as will appear by noting that both in the patent and in the instant application, those hydrocarbons are denominated as Kerozene or 'white oil.' * * * The aromatic compound claimed broadly in the patent is based upon a disclosure which includes each of the specific compounds named in the group expression of appealed claim 21, except monochlorbenzene. Also the degree of chlorination set forth in claim 1 of the patent—100 percent to 200 percent—is essentially the same as the '75% to not more than 200%' of the presently involved application."

It appears to us that claim 21 differs from the invention claimed in the Flett patent only in the recitation of the drying step. Such step, however, is disclosed in the patent wherein it is stated that the neutralized sulphonic acid "is evaporated to dryness on a drum drier" or "dried on a rotary drum drier." Claim 21, therefore, being based on an essentially identical disclosure, differs from the claims of the patent only in scope, in that it does not set out the drying step disclosed in the patent, but which appears in the appealed claims. Such step is not a patentable difference because it is one of scope. In re Lee, 139 F.2d 717, 31 C.C.P.A., Patents, 768, 772.

Since, for the reasons heretofore stated, we are of opinion that the process defined in appealed claim 21 is not inventive over the claimed process in appellant's patent, No. 2,247,365, we find that the decision of the board in that respect is without error.

Claim 22 differs from claim 21 only in that it sets out the use of "drum drying"; claim 24 differs from claim 22 as being more specific with respect to the petroleum distillate; claim 26 is more specific than

claim 24 in that it is limited to benzene, a member of the group of aromatic compounds contained in the other claims.

We find no patentable distinction between claim 21, 22, 24, and 26, and, therefore, the reasoning as applied to claim 21 applies to all of those claims.

 Claims 23, 25, and 27 do not read on the elected drum drying species. Moreover, in their reasons for appeal, appellant appears to admit that those claims are directed to a non-elected species. Therefore, their rejection on their merits is not before us for consideration.

It is not necessary to lengthen this opinion by further discussion of the claims and references.

The decision of the Board of Appeals is affirmed.

Affirmed.

By reason of illness, O'CONNELL, Associate Judge, was not present at the argument of this case and did not participate in the decision.