35 C.C.P.A.(Patents)

### Application of WAITE et al.

### Patent Appeal No. 5427.

Court of Customs and Patent Appeals.

May 4, 1948.

Roy F. Steward, of Washington, D. C. (Elmer Stewart, of Washington, D. C., of counsel), for appellants.

W. W. Cochran, of Washington, D. C. (H. S. Miller, of Washington, D. C., of counsel), for the Commissioner of Patents.

Before GARRETT, Presiding Judge, and HATFIELD and JACKSON, Associate Judges.

GARRETT, Presiding Judge.

Appellants seek review and reversal of the decision of the Board of Appeals of the United States Patent Office affirming that of the Primary Examiner rejecting the twenty-eight claims of their application relating to alleged new and useful improvements in vitreous enamel opacifiers, "more particularly to compositions suitable for use as mill addition opaquing or opacifying agents, in conjunction with pre-smelted enamel frit and other constituents of an enamel mix, for production of white vitreous or porcelain enamels especially." No claims were allowed.

All the claims were rejected for lack of invention over prior art cited and claims 7, 15 to 18, inclusive, and 24 to 27, inclusive, were additionally rejected as being indefinite.

The appealed claims are numbered 1 to 7, inclusive, and 9 to 29, inclusive.

Claims 1 to 7, inclusive, and 15 to 29, inclusive, are process claims. It is noted that all the process claims after claim 1, except claims 28 and 29, refer to that claim. Each begins with the phrase "The process defined by claim 1."

Claims 9 to 14, inclusive, cover the product and each of those claims after 9 refers to it in the opening phrase, "A mill addition opacifier as defined in claim 9."

The following descriptive matter appears in the decision of the board:

"The application relates to the manufacture of opacifiers for use in making vitreous enamel. The opacifier is used as "a mill addition" product and, as stated by appellants, is to be usually manufactured and supplied to enamelers for the purpose of being added to the mix that is smelted in producing the glass, which subsequently constitutes the bulk of the vitreous enamel coating. The opacifier, as covered in the numerous process and product claims, includes a mix capable when calcined of yielding a product consisting of three essential components, namely, calcium oxide, antimony pentoxide and titanium oxide. In some instances, as recited in many of the claims on appeal, calcium fluoride is added for the purpose of avoiding an undesirable yellow tinge in the finished vitreous enameled product. Some of the claims are drawn to the process of manufacturing the mill addition opacifiers and some to the opacifiers as a product. Many of them include the additional feature of washing the calcined product with water and dilute acid and all of them except 28 and 29 are limited to various different proportions of the oxides recited in the claims."

It is noted that claims 28 and 29 specify oxides of calcium, antimony and titanium, but do not designate the proportions as is done in the other claims. According to the statement of the Primary Examiner, the opacifier material, which is used for rendering the enamel opaque, is mill added in the grinding of the enamel frit.

As illustrative of the claims on appeal the board quoted 1, 9, and 29 which read as follows:

"1. The process of manufacturing compositions useful as mill addition opacifying agents in the production of vitreous or porcelain enamels, which comprises calcining material consisting essentially of intimately commingled oxides of calcium, antimony and titanium in finely divided condition, said oxides being so proportioned in the mix as to give a calcined product having a composition characterized by a predetermined correlation between the numerical values of the basicity ratio $\dfrac{(TiO_2+Sb_2O_5)}{CaO}$ and the titanium-antimony ratio $\dfrac{(TiO_2)}{Sb_2O_5}$, respectively, said numerical values lying within the total area represented by Area A plus Area D on the accompanying graph hereinbefore described, and by a molar proportion of antimony pentoxide within the range 0.10 and 0.90 when the molar proportion of calcium oxide is taken as 1.0."

"9. A mill addition opacifier useful in preparing vitreous or porcelain enamels, consisting of the product of calcining an intimate mixture of oxides of calcium, antimony and titanium at reacting temperatures insufficiently high to smelt the mixture, the mixture being so proportioned that, in the calcined product, the basicity ratio $\dfrac{(TiO_2+Sb_2O_5)}{CaO}$ and the titanium-antimony ratio $\dfrac{(TiO_2)}{Sb_2O_5}$ have numerical values which lie within the total area represented by Area A plus Area D on the accompanying graph hereinbefore described, and which bear a predetermined relation to one another, and the molar proportion of antimony pentoxide is not less than 0.10 nor more than 0.90 when the molar proportion of calcium oxide is taken as 1.0; enamel produced with such opacifier under standard test conditions having a reflectance value not more than 3 per cent lower (R-diff) than an enamel produced under the same conditions except for the use of tin oxide as opacifier."

"29. In a process of manufacturing mill addition opacifiers which includes calcining a mix capable of yielding a calcined

product consisting mainly of three essential components, calcium oxide, antimony pentoxide and titanium oxide, in intimate association, the further steps of washing said calcined product, first with dilute acid and then with water, to remove soluble base or alkaline material therefrom, followed by drying and pulverizing."

There were cited as references page 270 of a 1935 publication by Andrews (no other name given), relating to enamels, and the following patents:

Harshaw et al., 2,033,707, March 10, 1936.

Harshaw et al., 2,199,794, May 7, 1940.

Harshaw et al., 2,200,170, May 7, 1940.

McIntyre et al., 2,189,148, Feb. 6, 1940.

Claims 28 and 29 require consideration apart from the other claims.

We do not understand appellants to contend that any one of the process claims 2 to 7, inclusive, and 15 to 27, inclusive, is allowable unless claim 1 be found to be so, nor do we understand it to be contended that any one of the product claims 10 to 14, inclusive, is allowable unless product claim 9 be found to be so. On the other hand, if process claim 1 be found allowable, process claims 2 to 7, inclusive, and 15 to 27, inclusive, should also be allowed, and if product claim 9 be found allowable, product claims 10 to 14, inclusive, should also be allowed.

In view of this situation we do not deem it necessary to discuss in detail appellants' grouping arrangement of the claims in which they place claims 1 and 9 in a first group; claim 3 in a second group; claims 4 and 12 in a third group; claims 5 and 13 in a fourth group; claims 6 and 14 in a fifth group; claims 2, 10, 20–29 in a sixth group; and claims 7, 16–19 and 24–27 in a seventh group.

Many of the groups so designated seem to be based upon what are referred to as "Areas" shown in a drawing in the form of a graph and referred to in appellants' specification in connection with proportion ranges of the ingredients of the mix. This matter is hereinafter discussed as is the step of "washing" upon which appellants' group 6 appears to have been based in part.

Following the example of the board, we first consider the broad claims 28 and 29, and what is said with respect to them will have application to certain phases of the controversy respecting other of the claims.

It will be borne in mind that both those claims disclose the use of the three essential oxide compositions—calcium, antimony and titanium—but does not disclose any specific proportions. Claim 13 of the Harshaw et al. patent, 2,199,794, reads:

"13. A mill addition opacifier for vitreous enamels, the same being a calcination product and containing CaO, CaF₂, Sb₂O₅ and TiO₂ in approximately the proportions:

| | Parts by weight |
|---|---|
| Calcium compounds | 23 to 52 |
| Antimony oxide | 44 to 46 |
| Titanis | 32 to 34 |

calcium fluoride being present to the extent of at least five parts by weight."

That clearly anticipates appealed claims 28 and 29, except for the washing provision of those claims. As to that feature there is some slight confusion as to the record showing, and it may be said that this matter is involved with respect to the twelve claims identified in appellants' group 6, as well as in claims 28 and 29.

In the brief for appellants it is said, in substance, that the prior art relied upon is devoid of any suggestion of washing a calcined opacifier composition of any kind "much less one produced as set forth and consisting essentially of calcium, antimony and titanium oxides."

The Primary Examiner who first listed the Andrews publication as a reference, in his statement following the appeal to the board, said:

"The function of washing in some of the claims is known, obvious and matter of choice. See Andrews page 270."

That is the only mention of Andrews in the Primary Examiner's statement, but the board says flatly "The Primary Examiner states that the washing step is disclosed in the Andrews publication." Whether the board thought it was so disclosed is not clear, but it is our impression that, as is suggested in the brief of the

Solicitor for the Patent Office, it "proceeded to a decision without relying upon the publication." Its statement reads:

"However, as stated above, we do not believe that any invention is involved in washing a calcined product to remove the alkaline material by using dilute acid and water since these steps are conventional in all processes of the character with which the application before us is concerned."

In our examination of the excerpt from the Andrews publication we fail to find anything which seems to us to admit of the interpretation that it discloses a washing step, but this is not conclusive of the issue upon this phase of the controversy.

As a matter of fact, we are not quite certain as to the extent of appellants' reliance upon the washing feature of the several claims in which it appears. The brief on their behalf states, " * * * while it is not an absolutely indispensable feature of appellants' broad invention, it is commonly of great practical advantage and, therefore, constitutes a part of the manufacturing process in what is regarded as the optimum embodiment of the invention." If appellants did, in fact, rely upon it—and, as has been indicated, it seems to be the only step upon which any reliance could be placed as to claims 28 and 29— it is our view that they should have taken action under Patent Office rule 66 when the Primary Examiner rejected the claims independently of any reference, as he, in effect, did when he said "There is nothing unobvious seen in washing to remove soluble materials (e.g. claims 2, 8 [not now involved] and 10)."

It would seem that appellants might have required verification of the Primary Examiner's assertion by affidavit under Patent Office rule 66 and might have traversed it under rule 76, but this was not done. The holding of the Primary Examiner made seemingly upon the basis of his personal knowledge and without reference to the Andrews publication or other prior art is not shown to have been challenged before the board, and we do not regard the holding of the board as to the nonpatentability of the washing step as being actually at issue here in any of the claims of which that step constitutes a part. Clearly claims 28 and 29 were properly rejected.

The main issue with respect to all the claims except 28 and 29 relates to the question of the proportions of the various ingredients used in the mix.

It has been stated that each of the prior art patents discloses the use of the three basic oxide ingredients, that is oxides of calcium, antimony and titanium, and, it may be added, that with the exception of the patent to Harshaw et al., No. 2,033,707, each patent shows calcium fluoride also. The formulas are recited in the brief of the Solicitor for the Patent Office as follows (omitting page references):

"The patent to Harshaw et al., 2,033,-707 * * * relates to a vitreous enamel opacifier of $CaO$, $Sb_2O_5$, and $TiO_2$ in predetermined correlation.

"The patent to McIntyre et al., 2,189,148 * * * relates to an opacifier including $CaO$, $Sb_2O_5$, $TiO_2$, and $CaF_2$.

"The patent to Harshaw et al., 2,199,-794 * * * relates to an opacifier for vitreous enamels including $CaO$, $Sb_2O_5$, $TiO_2$, and $CaF_2$ in predetermined correlation. It discloses a process for making the opacifier including calcining a mix * * *.

"The patent to Harshaw et al., 2,220,170 * * * relates to an opacifier for vitreous enamels including $CaO$, $Sb_2O_5$, $TiO_2$, and $CaF_2$ in predetermined correlation.

The formulas, of course, are the same as the formulas of appealed claims 1 and 9, supra, except that calcium fluoride is not included in claims 1 and 9. It is however, named as an ingredient, evidently affecting color, in a number of the other claims.

It seems to us that claims 1 and 9 (upon which all the other respective process and product claims depend) are rendered highly technical by the recitals therein respecting areas outlined on the graph, or drawing, which constitutes a part of the application. The brief on behalf of appellants declares:

"It is possible to express the correlation of said proportioning factors in rectangular coordinates for the purpose of plotting specific opacifier compositions of the 3-essential-oxide type (i. e. consisting of the oxides of calcium, antimony and titanium) on a graph, so that the relation

of the large number of appellants' new opacifiers to the very few of generally similar type actually disclosed by the prior art may be visually apparent. Any of several equivalent forms or systems of such rectangular coordinates may be used for the purpose, but with some the plotted points would be so crowded together as to be confusing. That adopted for the graph constituting the present application drawings * * * maintains the plotted compositional points reasonably well apart and was chosen for the greater clarity it affords."

The board discussed the graph as follows:

"The drawing accompanying the application on appeal illustrates the proportions and the various areas designated on the diagram are referred to in the claims either by defining the limits of the areas or by reciting them by their designating letters. The diagram is not of the usual character for designating the proportions of a three-element mixture such, for example, as a ternary diagram whereby the proportions may be more appropriately illustrated. Instead, the diagram utilizes for the unit of its vertical axis the molecular ratio of the titanium oxide and the antimony pentoxide and for the unit of its horizontal axis the molecular ratio of the sum of the titanium oxide and antimony pentoxide to the calcium oxide. This ratio is termed by applicants a 'basicity ratio' and appellants note in their application that as the numerical value of the "basicity ratio" increases, the actual chemical basicity of the opacifier product decreases. This is for the obvious reason that applicants have elected to utilize the basic element CaO as the denominator of the fraction designating the ratio. This manner of designating the proportions of the oxides forms a diagram which, as held by the Primary Examiner, is distorted by expansion as compared with a simple diagram and this is suggested in the brief for appellants, who state that this form of diagram was adopted to maintain the plotted compositional points well apart. On this diagram a limited area L-L and the point M are said to designate the field of proportions disclosed in the prior art. Applicants have designated various areas A, B, C and D,

the broadest area A and D together constituting an area representing proportions practically surrounding the proportions disclosed in the prior art of record as indicated on the diagram. Areas B and C are specific areas within area A and are said to be preferred by applicants."

It appears to have been the view of the Primary Examiner, approved by the board that appellants merely selected "fields of proportions of the oxides outside of the field of the prior art" and that "nothing unobvious or critical is shown to flow from such departure from the field of the art."

The Primary Examiner declared:

"Applicants are not seen to have made such comparisons as show that the area of the art on the drawing may not as well be used as the field laid by applicants as their invention. Applicants have made no showing of tests from the field in which the references fall."

Without entering into details it may be conceded that appellants have set out proportions of ingredients in the appealed claims, either specifically or by reference, which are not specifically disclosed by the prior art cited, but it is the rule that while a change in the proportions of an old combination may be inventive under some circumstances, it is not so unless the change be critical as compared with the proportions used in the old combination. In the case of In re Dreyfus, 73 F.2d 931, 934, 22 C.C.P.A.(Patents) 830, a question was presented as to whether there was invention in increasing the number of parts of alkali per one part of water. Under the facts there appearing, we declared:

"This is a very technical question, and before we would be warranted in reversing the decision of the Board of Appeals we think it should appear from the record that the increased proportion of alkali disclosed by appellant over that disclosed by Lilienfeld produces a result different in kind from the result produced by the process disclosed by Lilienfeld, and not merely different in degree."

The case of In re Bergen, 120 F.2d 329, 28 C.C.P.A.(Patents) 1184, is of similar purport.

We do not overlook the fact that here it is contended on behalf of appellants that criticalness has been demonstrated and we have carefully reviewed appellants arguments on that phase of the controversy.

It is said at one point in the brief on behalf of appellants that they "went directly counter to, and eventually disproved, at least three teachings and beliefs of the prior art respecting 3-oxide opacifier compositions generally." The three teachings claimed to have been disproved are stated in the brief as follows:

"(1) That certain other oxides are 'equivalents' for calcium oxide and titanium oxide in such compositions, and can be substituted therefor more or less indifferently without unfavorably affecting the character of the opacifiers.

"(2) That the titanium oxide content was responsible for the yellowing tendency of such opacifiers, and that hence the proportion of titanium in the opacifier must not be so large as to result in a mole ratio of the titanium oxide content to the antimony oxide content that is substantially greater than about 3:1.

"(3) That increasing the antimony oxide content tends to lower the opaquing power of the opacifier."

We fail to discern wherein appellants' discovery that certain oxides which the prior art indicated might be equivalents for calcium and titanium oxides could not, in fact, be satisfactorily substituted for them, has any bearing upon the patentability of the appealed claims. The brief of the Solicitor for the Patent Office aptly states:

" * * * the teachings alleged to have been disproved relate, not to the ingredients disclosed as being suitable for the mix to make an opacifier, but relate to the results thought by the respective patentees to flow from the particular ingredients individually. Whether they were right or wrong on their theories of why their alleged inventions worked the way they did is immaterial on the point of their disclosures of the particular ingredients mentioned as suitable for a mix for making opacifiers. In re Modine, 57 F.2d 355, 19 C.C.P.A., Patents, 1058; In re Ebert et al., 57 F.2d 356, 19 C.C.P.A. 1087."

It is asserted in appellants' brief:

"The boundaries of the areas on the graph corresponding to the limitations in appellants' claims are critical in the sense of providing a reasonably definite line of demarcation between appellants' invention on the one hand and, on, the other, the prior art and undesirable or inoperative compositions."

■ We do not understand that by this appellants imply that the compositions embraced in the prior art are, as a whole, undesirable or inoperative. Rather, as we understand it, the meaning is that in some instances the particular proportions of the ingredients recited in the patents were found to be undesirable—possibly, from some standpoints (e. g. the color resulting from their use), inoperative. As to this, a difference of result in kind as distinguished from a difference in degree is not established merely by showing a change in proportions of ingredients, and we are not convinced that appellants have otherwise established the accomplishment of a result different in kind from the disclosure of the prior art. In In re Selmi et al., 156 F.2d 96, 33 C.C.P.A.(Patents) 1187, we held (citing In re Swenson et al., 132 F.2d 1020, 30 C.C.P.A.(Patents) 809) that one alleging a critical difference (that is a difference in kind as distinguished from a difference in degree) growing out of claimed proportions of ingredients must establish such criticalness by proof. That ruling has not been complied with in the instant case.

The board said inter alia:

"The Primary Examiner points out that the diagram discloses that as the areas said to designate the prior art proportions are approached, a greater number of points indicating satisfactory results are found. In addition we note, for example, that the most remote point indicating a satisfactory experiment noted on the diagram indicates a basicity ration of about 4.46. How this experiment warrants the extension of the area staked out by applicants up to 5.0 on the diagram is not apparent. It is further noted that in the diagram rather widely scattered points within the areas selected by applicants indicate proportions said to illustrate successful ex-

periments. There is nothing of record, however, to indicate that every other proportion within the areas will result in satisfactory or superior opacifiers. It is apparent therefore that applicants, on the basis of the several experiments, have not accurately determined the limits of the areas by experimentation. Likewise, it does not follow because some of the points within the areas selected by applicants represented successful proportions, that all of the points within the areas designated on the diagram represent successful proportions. We therefore agree with the position of the Primary Examiner that the contribution of applicants merely consisted in casting about in the field of proportions surrounding the prior art field for other proportions and, that, on the basis thereof, they have staked out areas avoiding the prior art."

As we understand the view of the Board of Appeals, it is that appellants have not opened up a new field of satisfactory three-oxide mill addition opacifier compositions, but that they merely cast about "in the field of proportions surrounding the prior art field," and by experimentation found some proportions differing from the prior art proportions which would work as well or possibly even better in degree than such prior art proportions, and "staked out" areas which they seek to monopolize although it has not been demonstrated that their proportions cover all the points within such staked out areas. The effect of the allowance of the appealed claims, therefore, would be to close the entire field and shut the public out from further experimentation such as is now open to it under the patents, without appellants having, in fact, contributed new matter to the art.

We fail to find any reason or reasoning which, in our opinion, would justify a reversal of the decision.

Reference is made in appellants' brief to alleged commercial success. We do not regard that matter as one necessary to be considered in this case, but even if it were, the affidavit concerning it seems to relate to a companion application and not to the one under consideration.

Appellants also refer to some other patents which have been granted to other parties, and assert that they "afford further convincing evidence of the patentability of appellants' process and product."

We apprehend that there is no rule of patent law more firmly settled, nor any which has been more frequently stated, than the rule that this court will not allow rejected claims simply because similar claims may have been allowed by tribunals of the Patent Office in some other application, or even in the particular application under consideration. In re Lee et al., 139 F.2d 717, 31 C.C.P.A.(Patents) 768; In re Haller, 161 F.2d 280, 34 C.C.P.A.(Patents) 1003.

In view of our conclusion upon what obviously is the main issue in the case, which applies to all the appealed claims, we regard it unnecessary to pass upon the rejection of claims 7, 15, 16, 17, 18, 19, 24, 25, 26, and 27 upon the ground of indefiniteness, nor is it necessary to discuss minor collateral questions the determination of which would have no bearing on the result.

For the reasons indicated, the decision of the Board of Appeals is affirmed.

Affirmed.

By reason of illness, O'CONNELL, Associate Judge, was not present at the argument of this case and did not participate in the decision.