3( C.C.P.A. (Patents)

**Application of GARDINER.**

**Patent Appeal No. 5492.**

United States Court of Customs and Patent Appeals.

Dec. 7, 1948.

Ralph L. Tweedale, of Detroit, Mich. (N. Douglas Parker, Jr., of Washington, D. C., of counsel), for appellant.

W. W. Cochran, of Washington, D. C. (H. S. Miller, of Washington, D. C., of counsel), for the Commissioner of Patents.

Before GARRETT, Chief Judge, and HATFIELD, JACKSON, O'CONNELL, and JOHNSON, Judges.

JACKSON, Judge.

This appeal is from a decision of the Board of Appeals of the United States Patent Office affirming that of the Primary Examiner finally rejecting claims 15 to 19, inclusive, of an application, serial No. 527,224, filed March 20, 1944, for a patent for new and useful improvements in "Power Transmission." Twelve claims were allowed, seven by the Primary Examiner and five by the Board of Appeals.

Claims 15 and 16 are illustrative of the subject matter of the rejected claims and read as follows:

"15. A valve comprising an annular seat, a ball adapted to close the seat, and a central jet passage ahead of the seat and of a diameter less than half the seat diameter whereby to create a high velocity jet of fluid to impinge upon the ball when the valve is open.

"16. In a pressure relief valve assembly for a hydraulic system, a housing having a main valve chamber and an inlet opening therein for communicating with the hydraulic system, a combined piston and valve assembly in said chamber dividing the chamber into a first section including said inlet opening and a second section, said second section comprising an exhaust opening adapted to be closed by the valve, a valve stem in the exhaust opening, a piston at the end of the stem of smaller cross section than said first piston, said housing forming closed cylinders for the pistons, said stem and pistons having a passageway in communication with the closed cylinders, a restricted bypass connecting the first piston chamber and the exhaust opening, a restricted passage connecting the first piston chamber and the inlet, a pressure release means controlling said bypass, said first-mentioned piston acting to cause said valve to close the exhaust opening, and said valve stem piston acting to balance a portion of the pressure exerted by the first-mentioned piston when the valve is closed."

Claims 17 to 19, inclusive, depend for allowance upon the dispostition made of claim 16 and therefore need not be discussed. Those four claims were copied by appellant from a patent to George E. Pasco, No. 2,360,816, dated October 17, 1944, upon an application filed July 8, 1943, for the purpose of provoking an interference.

Claim 15 was rejected by the examiner as being unpatentable over the prior art, reading as follows:

Pollock, 488,220, December 20, 1892.

Sechrist, 1,305,747, June 3, 1919.

Clifton, 2,366,596, January 2, 1945.*

The examiner rejected claims 16 to 19, inclusive, as unreadable upon the device of appellant.

The invention relates to pilot-operated relief valves for limiting pressure in fluid relief systems, particularly with reference to valves adapted to function in fluid systems of very high pressure.

The application discloses a valve body which in its lower part is provided with a through inlet tubular passage and at about its upper third a like outlet passage, said passages being at right angles to the length of the valve body. The passages are connected by a tubular bore in which there is mounted a fixed sleeve which is sealed near its lower extremity and provided at the bottom thereof with a valve seat. There is a central tubular bore inside of the fixed sleeve upon the top of which there is a fixedly mounted valve seat containing a longitudinal bore of relatively narrow diameter, flaring at the top and controlled in its function by a ball pilot valve held in closed position by a spring extending from the top of the device. There is also disclosed another spring pressed valve provided with a piston on the upper end thereof and a piston at its lower end. That valve is in the so-called lower or bottom chamber of the valve body.

In the operation of the device liquid pressure passes into the chamber surrounding the spring near the bottom of the device through the inlet opening and thence

---

* Upon an application filed December 31, 1942.

through a smaller opening. The pressure is designed to assist the spring in maintaining the lower valve on its seat. That pressure passes through the concentric center bores, exerting upward pressure upon the ball valve. A predetermined maximum downward pressure is set by means of a spring at the top of the device. When the inlet pressure exceeds the said downward spring pressure, the ball valve is lifted from its seat and more pressure fluid escapes from the lower chamber through said bores. and then through a plurality of milled slots to the outlet passage, than enters the device. The pressure in the lower chamber then becomes so reduced that the inlet pressure exerts a downward force upon the lower piston, overcoming the resistance of the lower spring so that the bottom valve opens and excess pressure fluid passes through the seat of that valve and several passages to the outlet passage. When the pressure in the upper valve is reduced, as aforesaid, to a desirable point, the top spring moves the ball back onto its seat thereby causing a rebuilding of pressure in the lower chamber and a reseating of the lower valve. It is said, due to the structure of the ball valve seat bore, that the fluid stream through the bore so stabilizes the ball in the open valve position that "chattering" of the valve is inhibited.

The issues here are whether or not claim 15 is patentable over the prior art, and whether or not claims 16 to 19, inclusive, can be read upon the disclosure of appellant. With respect to the latter issue, the only question before us is whether the limitation, "a restricted bypass connecting the first piston chamber and the exhaust opening," reads upon appellant's disclosure.

The Pollock reference relates to a nozzle adapted to be attached to a water hose or fountain. A nozzle is disclosed in the mouth of which a ball is retained by an annular shoulder at the tip of the nozzle which has a bell shaped mouth and a central bore larger in diameter than the throat or contracted end of the mouth.

The Sechrist patent relates to safety valves for pressure cookers. It discloses a valve body and a ball valve held in closed downward position by a spring. Below the ball there is a tubular steam passage, the upper part of which is expanded forming a seat for the ball. When the steam pressure reaches a certain point in the cooker, it raises the ball against the lesser pressure of the spring thus opening the valve.

The Clifton patent is for a relief valve sensitive to pressure in a high-pressure fluid system and it is said to operate without "chattering." A valve is disclosed with a bore extending to a valve seat upon which a ball rests.

The Primary Examiner rejected claim 15 as being fully met by the structure of the Sechrist patent, stating that the structure of the patent and the claimed structure are so closely alike that he saw no invention in the slight difference. He also held that the Pollock device, while not intended to function as a valve, nevertheless had inherent in its structure such a function in that the patentee uses the ball-nozzle principle in controlling the movement of the ball. The Board of Appeals affirmed the examiner's holding with respect to claim 15 and added the further rejection of lack of invention in view of the Clifton patent.

The first limitation in claim 15, "a valve comprising an annular seat," is met by both the structure of the Sechrist patent and that of the patent to Clifton. The second limitation, "a ball adapted to close the seat," is likewise disclosed in both of those patents. With respect to the third element, "a central jet passage ahead of the seat and of a diameter less than half the seat diameter whereby to create a high velocity jet of fluid to impinge upon the ball when the valve is open," it is clear to us that the structure of the Sechrist patent discloses a passage centrally located ahead of the seat for the valve ball.

It is true that a "jet" passage is not disclosed in any of the references. However, the word "jet" is not a definition of the structure, but merely indicates the purpose for which the passage is used. It is trite to state that the patentability of

316

apparatus claims must be shown in the structure claimed and not merely upon a use, function, or result thereof. With respect to the argument of counsel for appellant that the passage diameter is "less than half the seat diameter," and therefore distinguishes patentably over the prior art, we agree with the Board of Appeals, that such a specification of passage diameter is taught by the structure of either the Clifton or Pollock patent. There is nothing in the specification to indicate that the size or proportion of the "jet" passage is critical. It is merely pointed out that "It is *preferred* to make the jet 52 of a diameter no greater than half the diameter of the pilot valve seat 50 * * *." (Italics ours.) Since those proportions are merely preferred, they can not be considered as critical. In re Britton, 115 F.2d 249, 28 C.C.P.A., Patents, 726.

■ It is contended by counsel for appellant that the board used somewhat anomalous reasoning in rejecting claim 15 and allowing claims 7, 8, and 9, which contain the words, "means forming a jet." There is no reason, however, for allowing the rejected claims, even if such contention be true. In re Lee, et al., 139 F.2d 717, 31 C.C.P.A., Patents, 768.

■ By reason of what has hereinbefore been said concerning the rejection of claim 15, we find no error in the decision of the board.

■ Appellant contends in his brief that "a restricted bypass connecting the first piston chamber and the exhaust opening" is shown in his device by the larger of the two concentric passages, heretofore mentioned, which extends upwardly from the lower or first piston chamber, the jet passage of small diameter extending upwardly therefrom and supporting in its widened upper end the ball, the milled slots, the space interiorly adjacent to the outlet, a downwardly extending bore to beyond the space interiorly adjacent the inlet member, and a plurality of drilled passages connected through the outer face of the fixed sleeve to a counter bore therein.

The examiner observed that the larger of the two concentric passages is included twice as an element, in the manner in which counsel for appellant attempts to read the bypass limitation upon his disclosure. In support of the propriety of thus claiming an element twice, counsel for appellant cites several decisions not necessary to set out here. They have no pertinence here for the reason that the holdings therein were predicated on claiming an element twice where "it really performs two independent functions." There is no such disclosure in appellant's application. The larger of the two concentric passages is mentioned in the specification only twice. It is stated therein that the bore or passage connects the lower, or first, or control chamber, as it is variously called, with the ball pilot valve seat and again that the fluid is discharged through that passage, and the narrower concentric passage, and the ball valve, to the discharge passage. Thus, it will be seen that the element now under discussion performs but one function.

While the board held that appellant's claimed bypass is not a bypass, it further held that even if it were held to be such, it does not bypass between the "first piston chamber and the exhaust opening," as set out in claim 16. It appears to us from a careful examination of the drawing of appellant's device that its claimed bypass at one end terminates in the exhaust opening, and the restricted passage of the interior concentric tubular opening begins at the second or upper piston chamber, and not "at the first piston chamber," as required by the claim.

By reason of what has hereinbefore set out, we can not agree that the larger of the two concentric passages, through which the pressure fluid passes directly through the interior concentric passage to press against a ball, can be considered as a bypass, for the reason that the latter passage begins in the second or upper piston chamber and not in the first as claimed.

The decision of the Board of Appeals is affirmed.

Affirmed.