39 C.C.P.A.(Patents)

## Application of HONNIG.
### Patent Appeals No. 5816.

United States Court of Customs and Patent Appeals.

Argued Nov. 7, 1951.

Decided Dec. 18, 1951.

Virgil C. Kline, New York City (Lee B. Kemon, Sidney W. Russell, Washington, D. C., and Rudolph J. Anderson, Jr., Arlington, Va., of counsel), for appellant.

E. L. Reynolds, Washington, D. C., (S. W. Cochran, Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Chief Judge, and JACKSON, O'CONNELL, JOHNSON, and WORLEY, Judges.

JACKSON, Judge.

This appeal is from a decision of the Board of Appeals of the United States Patent Office affirming that of the Primary Examiner finally rejecting 3 claims of an application by appellant, serial No. 624,827, filed October 26, 1945 for a patent on "Improvements in Molded Heat Insulation and Method of Manufacture." Thirteen method claims were allowed.

The rejected claims read as follows:

"8. In manufacturing insulation blocks comprising basic magnesium carbonate reinforced with fibers, the steps comprising, charging a filter mold with an aqueous slurry comprising fibers and normal magnesium carbonate crystals, pressure filter molding the slurry solids while partially dewatering the charge, immersing the mold and mold charge in direct contact with hot water at a charge curing temperature above 140°F. during the charging and molding operations, and heat curing and drying the thus formed block.

"15. A method of manufacturing magnesia insulation blocks which comprises, providing a concentrated aqueous slurry comprising normal magnesium carbonate crystals and asbestos fibers at a temperature not exceeding 120°F., rapidly diluting and heating said slurry with hot water at a temperature of about 180–210°F. in amount sufficient to raise the temperature of the slurry above 140°F., maintaining the thus diluted and heated slurry quiescent for 2–30 minutes while developing therein large

flocks of interlaced fibers and crystals, molding the wet solids content of said slurry, and developing a set of the molded solids by application of heat thereto.

"21. A flocculent slurry which somewhat resembles in appearance incompletely cooked oatmeal porridge and which comprises a water suspension of moldable heat hardenable material comprising voluminous tufts of interlaced normal magnesium carbonate crystals and reinforcing fibers lightly bonded together by small patches of amorphous basic magnesium carbonate on the surfaces of the crystals at points of contact between crystals and between crystals and fibers, said tufts having such substantial wet cohesive strength and bulk that they do not settle appreciably while in dilute aqueous suspension and having such water retaining capacity as to impart volume stability to molded shapes thereof containing at least 12 parts by weight of uncombined water to one part of dry solids."

The following prior art was cited:

Greider et al.     2,335,242   Nov. 30, 1943
McGarvey          2,409,297   Oct. 15, 1946
Dinkfeld et al.   2,413,958   Jan.  7, 1947

The involved application relates to the manufacture of molded heat insulation blocks so as to provide a magnesia block with relatively hard, attractive, and non-dusting surfaces. Such blocks are said to be stronger and lighter than those made theretofore by conventional methods. The blocks are made of conventional material, asbestos fibers being mingled with magnesium carbonate. The innovation in the process is said to produce a block of less density and relatively high strength in a shorter time than the conventional procedures.

The Greider et al. invention relates to magnesium carbonate and articles formed therefrom, and their manufacture. It is said that the invention relates specifically to the production of normal magnesium carbonate for use in making formed articles; materials which comprise normal magnesium carbonate; and formed articles comprising basic magnesium derived from normal magnesium carbonate. The blocks of the process are said to be of high strength and low density. A slurry is disclosed in the patent which has high water retention characteristics and improved bonding strength. Such slurry is produced by comminuting magnesium crystals and adding filler and water so that the slurry contains 3.5 parts of water to each part of solids. The completed slurry is placed in a mold and heated to 190° F. without pressure.

The Dinkfeld et al. patent relates to magnesia heat insulation and is said to be particularly related to the making of improved magnesia insulating blocks with high strength and low density. The method of the patent shows the introduction of a magnesium carbonate asbestos slurry of 1.5 to 5% solids into a mold with perforated walls. The perforations are for the purpose of passing out the excess water in the slurry charge. Steam or water is admitted to a jacket which surrounds the molds for the purpose of heating the mold walls so as to heat the charge to a temperature of from 170 to 190° F. The patentees state that by this method a partial curing of the block is obtained by directly contacting it with hot water. It is said that the resulting product is of low density without loss of strength.

It is not necessary to describe the McGarvey reference.

Claim 8 was rejected by the Primary Examiner as not being in agreement with the specification. The reason for such holding was that in the claim there is no top limit for the hot water curing, while in the specification it is disclosed that such curing must be made within the range of from 140° F. to 180° F. That claim was further rejected as unpatentable over the Dinkfeld et al. reference. The examiner noted that the Dinkfeld reference and the involved application have the same assignee.

Claim 15 was rejected by the examiner as being indefinite for the reason that there is no upper limit set out in the claim for the temperature of the slurry and no lower limit for the temperature of the original slurry.

The examiner rejected claim 21 as an improper product claim. He stated in his decision that the slurry is claimed not to settle and noted that an affidavit had been filed in support of that claim, which, in his opinion, was equivocal at the point where it should be positive and therefore no conclusive showing had been made by appellant that the slurry is a stable substance. The examiner also rejected the claim as being based on new matter. In that respect he stated that the last two lines of the claim are based on an amendment to the application which is new matter and, in answer to the contention of counsel for appellant that the amendment does not constitute new matter, he stated that there had been a failure to point out any basis therefor and found no such basis.

Claim 21 was further rejected by the examiner as being fully met by the McGarvey reference. He noted that affidavits had been filed for the purpose of showing that such reference is not proper. He then stated that those affidavits are opinions by interested parties and were therefore accorded no weight. The claim was further rejected as unpatentable over the Greider et al. reference wherein the slurry is disclosed as one part of solids to 3.5 parts of water. In the opinion of the examiner there is no basis in the original disclosure for assuming that the amount of water set out in the claim is critical and that the only basis for such presumption is contained in the new matter.

The board agreed with the reasoning of the examiner in the rejection of claims 8 and 15.

With respect to claim 21, the Board of Appeals in its decision pointed out that that claim had been rejected by the examiner as an improper product claim; as fully met by the McGarvey reference; and as unpatentable over the Greider et al. reference. The board did not agree with the holding of the examiner that the two affidavits, which had been submitted to overcome the McGarvey reference, should not be considered merely because they were made by interested parties. It further stated that the examiner did not apply the McGarvey

reference and therefore that rejection by the examiner was held to be untenable.

The only issue to be decided here on claim 21 is whether it fails to distinguish patentably over the Greider et al. patent. It may be noted that that reference discloses a slurry of 1 part solids to 3.5 parts water. The original disclosure of the involved application does not set out as critical the amount of water in the slurry as defined by the claim.

During the prosecution of the case the specification was amended by setting out that a 3-pound per cubic foot block was molded with the mold charge possessing a ratio of 1 to 12 or more solid content to that of water. The board pointed out that in the original disclosure of the application it was said that blocks within the density range of 3 to 10-pounds per cubic foot could be produced and that appellant calculated that in producing such a block the water content would be at least 12 parts. It appears that claim 21 is based upon original claim 19, which does not appear in the record, and that claim is said by the board to be an intermediate product possessing the ratio between solids and water of 1 to 2 to 1 to 4. That composition was said to be a suitable preparation for molding or for the application of manual shaping or troweling.

The board, in its opinion, properly noted that there was no great correspondence between claim 19 and the composition of claim 21, which reads in part "such water retaining capacity as to impart volume stability to molded shapes thereof containing at least 12 parts by weight of uncombined water to one part of dry solids."

■ We find no statement in the original disclosure of appellant of the criticality of the 12 parts of water to each part of solids, and we are constrained to hold that the Greider et al. patent, disclosing a 3.5 parts of water to 1 part of solids, is a proper reference, and therefore claim 21 does not define a patentable distinction over such reference.

■ While it may be true that statements in affidavits can be considered as properly proving that it is impossible to

produce the flux and "oatmeal" appearance of the slurry specified in claim 21, nevertheless, for the reason that there is no disclosure as to the criticality of the ratios between solids and water, such as is set out in the claim, the statements in the affidavits cannot be held to be a substitute for proper disclosure in the application. In re Dalzell et al., 35 C.C.P.A., Patents, 1024, 166 F.2d 834; In re Gardiner, 36 C.C.P.A., Patents, 748, 171 F.2d 313; In re Ripper, 36 C.C.P.A., Patents, 743, 171 F.2d 297.

In our opinion, the only distinction possessed by the claim over the disclosures of the Greider et al. patent is in the amount of water dilution, and, in view of what we have said concerning lack of disclosure in the application, such ratio cannot be considered as critical.

It is clear to us that the temperature limitation of claim 8 is broader than the disclosure in the specification in that no top temperature is disclosed. Similar reasoning applies to claim 15.

For the reasons hereinbefore set out, the decision of the Board of Appeals is affirmed.

Affirmed.

Johnson and Worley, JJ., dissented.