**Application of Stephane Dufaure DE LAJARTE.**

**Patent Appeal No. 7237.**

United States Court of Customs and Patent Appeals.

Nov. 5, 1964.

John L. Seymour, Bauer & Seymour, New York City, for appellant.

Clarence W. Moore, Washington, D. C., (George C. Roeming, Washington, D. C., of counsel), for the Commissioner of Patents.

Before RICH, Acting Chief Judge, and MARTIN, SMITH, and ALMOND, Judges, and Judge WILLIAM H. KIRKPATRICK.*

ALMOND, Judge.

Stephane Dufaure De Lajarte appeals from a decision of the Board of Appeals affirming the examiner's rejection of all

---

* United States Senior District Judge for the Eastern District of Pennsylvania, designated to participate in place of Chief Judge WORLEY, pursuant to provisions of Section 294(d), Title 28, United States Code.

of the claims in appellant's application [1] for a glass composition.

The rejected claims 5 and 11 read as follows:

"5. Electrically insulating glass having a composition consisting essentially of the following constituents in per cent by weight

| | |
|---|---|
| $SiO_2$ | 66.8 |
| $B_2O_3$ | — |
| $Al_2O_3$ | 3.0 |
| $Fe_2O_3$ | 1.6 |
| MnO | 0.6 |
| CaO | 9 |
| MgO | 4 |
| BaO | 3 |
| $Na_2O$ | 8 |
| $K_2O$ | 4 |

said glass having resistance to perforation equivalent to at least about 36 KV in a plate 500 x 500 x 7 mm., at 200° C., under 50 cycle alternating current.

"11. Electrically resistant glass, in particular for glass insulators, having a resistance to perforation equivalent to at least about 20 K.V. in a plate 500 x 500 x 7 mm. at 200° C., under sine wave current of 50 periods, and having a composition consisting essentially of

| | |
|---|---|
| $SiO_2 + Al_2O_3$ of which $Al_2O_3$ is always present and is lower than 8% | 68–75 wt. percent |
| $Na_2O + K_2O$ | 12–15% |
| of which $K_2O$ is | 1– 4% |
| and $Na_2O$ is not over | 11% when $Al_2O_3$ is less than 4% |
| and $Na_2O$ is not over | 13% when $Al_2O_3$ is greater than 4% |
| members from the group consisting of CaO, MgO, and BaO of which CaO and BaO are present | 12–16% |
| and CaO is in the range | 7–12% |
| Metal oxides of the type of $B_2O_3$, $Fe_2O_3$, $ZrO_2$, $TiO_2$, PbO, MnO, ZnO + fluorine compounds" | 0– 5% |

———◆———

Appellant indicates that the intended use of his glass is as an electrical insulator. Glass suitable for such use must have high resistance to perforation by high-voltage electric current, particularly when the glass is hot. Appellant states that insulator glass must also maintain its resistivity at high tempera-

1. Serial No. 669,956, filed July 5, 1957, for "Glass Compositions."

tures, have good chemical durability under conditions of use and be free of devitrified or crystalline particles. He alleges that a glass having all of the desired properties can be obtained by making a glass having the composition set forth in the claims. It can be seen from claim 11 that a rather intricate relationship between components is specified. For example, the amount of $Al_2O_3$ present must be below 8% but not until the exact amount of $Al_2O_3$ is determined can the limits on $SiO_2$ and $Na_2O$ be set. The amount of $K_2O$ may vary from 1 to 4% but the permissible range of $K_2O$ is not determined until the amount of $Na_2O$ is established.

In his application, appellant compares what is described as "a prior art glass of a standard composition for electrical insulators" with glasses which conform to the composition set forth in the claims. The prior art glass contains 69% $SiO_2$, 1.5% $Al_2O_3$, 14.5% $Na_2O$, 0.3% $K_2O$, 11.3% $CaO$, 1.5% $MgO$, 1.3% $Fe_2O_3$, and 0.6% $MnO$. It can be seen that this composition varies from that set forth in claim 11 in containing more than 11% $Na_2O$ and less than 1% $K_2O$. The prior art glass had a resistance to perforation of 14 KV in a plate 500 x 500 x 7mm., at 200° C., under 50 cycle alternating current. The three glasses having compositions according to the claims have resistances of 24.5 KV, 31 KV, and 36 KV.

The sole reference is:

Lyle          2,443,142          June 8, 1948

The stated object of Lyle is to produce an amber glass of pleasing color and good chemical durability. Amber color is obtained by the addition of carbon and sulfur. Lyle states that:

"Prior amber glass of the reduced or carbon-sulfur type is notoriously unstable and such stability as is attained is often transitory. This is to be expected from the combustibility of the basic coloring materials, carbon and sulfur. Consequently, such glass, which is properly colored when partially melted, may lose color and may blister and foam as melting and fining proceeds and may become unfit for use if held very long at high temperatures."

To solve this problem, Lyle uses a composition having the following relation:

$$S - 2N = K$$

where S is the weight percentage of silica, N is the weight percentage of alkali and K is a constant ranging from 45 to 60. In Table I Lyle sets forth several examples of his amber glass including the following composition:

### A

| | |
|---|---|
| $SiO_2$ | 70.0% |
| $Al_2O_3$ | 3.5 |
| $CaO$ | 7.3 |
| $MgO$ | 5.2 |
| $BaO$ | 1.0 |
| $Na_2O$, $K_2O$ | 12.0 |
| $CaF_2$ | 1.0 |
| $Fe_2O_3$ | 0.041 |

The above glass was made from a batch having the following composition:

### A

| | |
|---|---|
| Sand | 200.0 |
| Soda Ash | 55.3 |
| Raw Dolomite | 79.8 |
| Nepheline Syenite | 48.8 |
| Barytes | 5.0 |
| Fluorspar | 3.5 |
| Powdered Charcoal | 1.0 |

Lyle states that the percentages of sulfur and carbon were omitted from Table I and that sulfur in A was supplied by barytes in the batch.

The examiner, in his letter of May 8, 1958, stated that Lyle "teaches a glass composition consisting essentially of the same oxides and proportions as claimed by applicant, note Table I, composition A * * *." The examiner contended in the Final Rejection of November 18, 1959 and in his Answer that the claims were directly readable on the composition of Lyle. This language would seem to indicate that the statutory basis of the rejection is 35 U.S.C. § 102. The board, however, talked about critical dif-

ference which could indicate 103. The solicitor, at oral argument, declared that he did not know what the ground of rejection was and refused to rely upon either 35 U.S.C. § 102 or § 103 alone. Apparently, then, both sections must be considered.

The examiner's intended rejection was apparently a "102 rejection," despite the actual differences which exist between Lyle and the claimed composition. In the Examiner's Answer, the 1% $K_2O$ limitation of the claims was treated as follows:

"The composition of Lyle would include the proportional limitation relationship of $K_2O$ and $Na_2O$ as recited in appellant's claim since it is noted in Table II, Composition A, that nepheline syenite is employed as the raw batch constituent for supplying $K_2O$ in the final glass composition A, Table I. In the analysis of nepheline syenite, $K_2O$ is present in amounts of more than 5%.

"Therefore, in Lyle's composition, since .05 of the combined $Na_2O$ and $K_2O$ total is $K_2O$, the amount of $K_2O$ is calculated to be about 1 percent of the total glass composition, thus falling within the range limitation of $K_2O$ (1–4%) recited in appellant's claims."

The fact that Lyle contains sulfur and carbon in addition to the components specified by the claims was not commented upon by the examiner.

The Board of Appeals affirmed the examiner but admitted that Lyle did not necessarily disclose a glass containing 1% $K_2O$ in stating:

"We note that Lyle discloses, particularly in Example A (table II in column 3), that a substantial amount of nepheline syenite is employed in preparing the glass. Although it cannot be regarded as certain as to exactly how much potassium is introduced into the glass composition thereby, there does not appear to be any doubt that the glass composition includes potas-sium. We find no evidence that there is any critical difference between the amount of potassium in the glass compositions of Lyle and the minimum of 1% specified in claim 11."

The board, as did the examiner, failed to comment upon the sulfur present in Lyle's composition. With regard to carbon, the board stated:

"Lyle discloses that a very small amount of carbon, less than ½ of 1%, is employed in the preparation of his glass composition A. In our opinion, it would not be expected that the presence of this small amount of carbon would substantially alter the electrical resistance of the glass composition. Claim 11 which recites "consisting essentially" the named ingredients does not exclude small amounts of other materials which do not change the essential character of the composition. In our opinion, it must also be considered that some of the charcoal employed by Lyle may be lost due to atmospheric oxidation during the preparation of the final glass. In the absence of a factual showing of a critical difference in the electrical resistance of appellant's glass composition as compared to that of the compositions taught by Lyle, we are of the view that claim 11 does not patentably distinguish from the reference."

Appellant contends that his claims are not anticipated by the Lyle reference because (1) Lyle's composition contains sulfur and carbon which are excluded from appellant's composition by the words "consisting essentially of" and (2) Lyle's composition does not meet the 1% $K_2O$ limitation recited in appellant's claims. We will first consider the carbon and sulfur question. Appellant and the solicitor agree that the issue is whether the introduction of sulfur and carbon would materially change the characteristics of appellant's insulating glass. The solicitor would put the burden of showing a material change on the

appellant. The effect of "consisting essentially of" was considered in In re Janakirama-Rao, 317 F.2d 951, 50 CCPA 1312, where, as in the present case, the claims were directed to a glass composition and the reference contained some modifying components in addition to those claimed by appellant. The court found that appellant's glass had no basic or novel characteristics and thus did not distinguish over the reference. Thus, here appellant has the burden of showing the basic or novel characteristics of his insulating glass. He has met this burden by pointing out in his specification and claims the great increase in resistance to perforation resulting from his composition.

The Board of Appeals and the solicitor contend that appellant has furnished no evidence that a critical difference in appellant's emphasized characteristics would result from the introduction of small amounts of Lyle's coloring agents, charcoal and sulfur. It is not clear what evidence they would require. The solicitor has noted that an affidavit which the board did not consider contains nothing significant on this issue. It may be implied that the Patent Office would require appellant to duplicate the Lyle glass and compare its resistance to perforation with that of appellant's glass.

 In the total absence of evidence in the record to indicate that the amber glass disclosed by Lyle would be expected to have desirable electrical insulating properties, we can find no justification for placing the burden on applicant to conduct experiments to determine the insulating properties of the colored glass disclosed by Lyle. Although there are only very slight differences between the Lyle composition and that sought to be patented, we cannot assume that these small differences are incapable of causing a difference in properties. Appellant, in showing that his glass has basic and novel properties (at least as far as the record is concerned), would appear to have met his burden.

Another difference between appellant's glass and the Lyle glass is the $K_2O$ content. Claim 11 calls for 1 to 4% $K_2O$. Lyle uses nepheline syenite, a $K_2O$-containing rock, in forming his glass. The amount of $K_2O$ in the nepheline syenite apparently may vary greatly and thus it is impossible to say just how much $K_2O$ is present in the Lyle composition. Appellant contends that at least one type of nepheline syenite will introduce only 0.6% $K_2O$ into the composition. The solicitor apparently concedes that the amount of $K_2O$ is uncertain. His position is, however, that even 0.6% is enough to meet the claims because there is no proof that the range of 1 to 4% is critical. There is no indication in the record that the examiner ever questioned the criticality of the range. The question was apparently first raised by the board. After the board's decision, appellant filed an affidavit attempting to establish the criticality of the 1–4% range. The board refused to consider the affidavit on the basis that no new rejection had been made and that the affidavit was not filed in time. The appellant does not dispute that ruling here.

In support of his position that in order for a claimed range to be critical the range must be disclosed as being critical, the solicitor cites In re Bourdon, 240 F.2d 358, 44 CCPA 740; In re Selmi et al., 156 F.2d 96, 33 CCPA 1187; In re Britton, 115 F.2d 249, 28 CCPA 726; In re Honnig, 193 F.2d 191, 39 CCPA 740; In re Shoemaker, 83 F.2d 288, 23 CCPA 1033; and In re Greider, 129 F.2d 568, 29 CCPA 1079. In Bourdon, Britton and Shoemaker, the issue was obviousness. Since the issue here is anticipation under 35 U.S.C. § 102, we do not feel that the language of those cases is applicable. In Selmi the claimed ranges of components in an alloy steel actually fell within the ranges of components of a prior art steel. This case is different, because the claimed range actually differs from the prior art range. In Greider and Honnig, the prior art showed a product similar to that claimed and having the same alleged properties. In both cases, the court refused to at-

tach any significance to a claimed range without a showing that the range caused an improvement over the prior art product. We do not have that situation here because there is no indication that the glass composition of Lyle has desirable electrical insulating properties. Thus, we do not feel that the cases relied on by the solicitor permit us to disregard the 1 to 4% limitation as immaterial.

We agree with the solicitor that there is little support in the record for the range. In fact, as the solicitor has pointed out, there is no evidence in the record that the application as originally filed specifically contained the 1 to 4% limitation. This attack, however, appears to be directed to the sufficiency of the disclosure. Since no rejection under 35 U.S.C. § 112 was made by the examiner, that issue is not now before us.

The claimed composition contains 1 to 4% $K_2O$, no sulfur, no carbon, and possesses insulating properties which, as far as the record indicates, have never been known in the prior art. The Lyle reference composition contains a small amount but likely less than 1% $K_2O$ plus sulfur and carbon as essential components. It is an amber colored glass with no electrical insulating properties disclosed. In view of these many differences, we hold that the Lyle composition does not anticipate appellant's claims.

We do not feel that a rejection based upon the premise that the differences between appellant's glass and the Lyle glass are obvious can be sustained. Admittedly, the differences are small, but Lyle is devoid of any suggestion of a glass embodying these differences. The examiner has failed to suggest any reason for omitting carbon and sulfur from the Lyle glass. If one were making a colorless glass free of carbon and sulfur, there would be little reason for using the Lyle-formula since it was primarily designed to enhance color stability. In the absence of any showing why it would be obvious to modify Lyle's glass, a "103 rejection" must be reversed.

Our discussion has been directed primarily to claim 11, but the reasoning applies also to claim 5 which is narrower than claim 11 and which the board treated as not patentably distinct from claim 11.

The decision of the Board of Appeals is thus reversed.

Reversed.