58 CCPA

**Application of James H. SAUNDERS and Paul G. Gemeinhardt.**

Patent Appeal No. 8500.

United States Court of Customs and Patent Appeals.

June 24, 1971.

Baldwin, J., concurred and filed opinion.

W. Brown Morton, Jr., Martin J. Brown, Washington, D. C., and Carl G. Ries, Houston, Tex., attorneys of record, for appellants.

S. Wm. Cochran, Washington, D. C., for Commissioner of Patents. Jack E. Armore, Washington, D. C., of counsel.

Before RICH, ALMOND, BALDWIN and LANE, Judges.

RICH, Judge.

This appeal is from the decision of the Patent Office Board of Appeals affirming the examiner's rejection of claims 6, 8–11, 19–21, 23, and 26 in appellants' application serial No. 758,890, filed September 4, 1958, for methods for preparing cellular polyurethane foam. We affirm in part and reverse in part.

## THE INVENTION

Appellants claim a family of methods for preparing cellular polyurethane foam by what may be generally characterized as the "one shot" technique. Claim 23, which the parties agree is illustrative of the broad claims on appeal, sets forth the process adequately for present purposes (subparagraphing and emphasis of the recitation principally in controversy supplied):

23. A method for making a cellular polyurethane which comprises

simultaneously mixing and reacting an organic polyisocyanate with a polyalkylene ether having at least 2 hydroxyl groups in the presence of a compound having the formula

$$R'Si \begin{cases} O(R_2SiO)_p(C_nH_{2n}O)_zR'' \\ O(R_2SiO)_q(C_nH_{2n}O)_zR'' \\ O(R_2SiO)_r(C_nH_{2n}O)_zR'' \end{cases}$$

[A4208]

wherein

R and R' are saturated hydrocarbon radicals having from 1 to 8 carbon atoms,

R'' is selected from the group consisting of hydrogen and a saturated hydrocarbon radical having from 1 to 8 carbon atoms;

p, q and r each have a value of from 2 to 15 and

*(C_nH_{2n}O)_z is a mixture of oxyethylene units and oxypropylene units containing 17 to 19 oxyethylene units and 11 to 15 oxypropylene units.*

Claim 26, which the parties agree is illustrative of the narrow claims on appeal, differs from claim 23 principally in that it recites the following subgenus of the genus of silicone surfactants recited in claim 23:

$$C_2H_5 - Si \left[ O \left( \begin{matrix} CH_3 \\ | \\ Si \\ | \\ CH_3 \end{matrix} - O \right) \left( C_nH_{2n}O \right)_z C_4H_9 \right]_3$$

[A4172]

in which the $(C_nH_{2n}O)_z$ component is a mixture of *17* oxyethylene units and *13* oxypropylene units. It also differs from claim 23 in that it calls for a tertiary amine catalyst and water, neither of which is recited in claim 23.

## THE REJECTION

The references relied upon are:

| | | |
|---|---|---|
| Rochow | 2,258,218 | Oct. 7, 1941 |
| Roberts et al. | 2,425,755 | Aug. 19, 1947 |
| Bailey et al. | 2,834,748 | May 13, 1958 |
| Hoppe et al. | Re.24,514 | Aug. 12, 1958 |
| Harris | 2,901,445 | Aug. 25, 1959 |
| Britain | 2,949,431 | Aug. 16, 1960 |
| Hostettler | 3,194,773 | July 13, 1965 |

(Grandparent application Serial No. 686,009, filed Sept. 25, 1957) [1]

Hostettler's grandparent application (henceforth simply "Hostettler") is the basic reference. Hostettler teaches a one-shot method for preparing polyurethane foams comprising reacting an organic polyisocyanate with a polyalkylene ether polyol in the presence of water, a tin catalyst, and a surfactant of the general formula shown in claim 23, but it clearly does not explicitly teach the use of such surfactants in which the $(C_nH_{2n}O)_z$ component "is a mixture of oxyethylene units and oxypropylene units containing 17 to 19 oxyethylene units and 11 to 15 oxypropylene units," much less the still smaller family of surfactants recited in claim 26. However, it was the examiner's position that, "Since the [grand] parent application of Hostettler specifically mentions Bailey et al and because Bailey et al specifically mention Roberts et al, * * * Bailey et al and Roberts et al are incorporated into the [grand]parent application of Hostettler." Bailey teaches how to make certain siloxane-oxyalkylene copolymers of the type Hostettler uses as surfactants, including one having approximately 17 oxyethylene units and 13 oxypropylene units, and Roberts in turn teaches how to make certain starting materials used by Bailey. Treating the three references as one, the examiner held that "the [grand]parent application of Hostettler anticipates (35 USC 102) the claims which *do not call for the presence of a catalyst*." (Emphasis in the original.) In the alternative, the examiner held that

* * * one skilled in the art would find it obvious (35 USC 103) to review the Bailey et al and Roberts et al patent in conjunction with the disclosure of the Hostettler parent application and in making such a review would find it obvious to use as a surfactant *inter alia* those claimed herein since Hostettler's parent case specifically refers to Bailey et al who in turn specifically refers to Roberts et al.

The examiner held the subject matter of the claims which *do* call for the presence of a catalyst unpatentable under 35 U.S. C. § 103 because of the Hostettler-Bailey-Roberts reference when taken in view of Hoppe, Harris, and Britain (Rochow being cited merely "to show the state of the art"). Hoppe, Harris, and Britain all teach the use of tertiary amines as catalysts in reactions of the general type employed by appellants.

The board affirmed the rejection of the claims which do not recite the tertiary amine catalyst on the section 103 ground without reversing the section 102 ground, and on appeal the solicitor has continued to press the section 102 ground vigorously. However, the board stated that "It is not necessary to go any further back than Bailey et al. to find the specified portions of the appealed claims," and it ignored the Roberts reference. Both the solicitor and appellants have done likewise in their briefs, and we, too, will consider only the Hostettler and Bailey references. The board also affirmed the section 103 rejection of the claims reciting the tertiary amine catalyst on the ground that "nothing more than the expected skill of the ordinary technican would be required to utilize the tertiary amine catalysts in

---

1. Appellants have not questioned the availability against them of the disclosure contained in Hostettler's grandparent application, In re Lund, 376 F.2d 982, 54 CCPA 1361 (1967), nor have they argued that the disclosure therein relied upon by the Patent Office was not "as to such invention" within the meaning of 35 U.S.C. § 120.

lieu of the tin catalyst [used by Hostettler]."

Both the examiner and the board gave consideration to the Rule 132 affidavits, filed by appellants to rebut the inference of obviousness arising from the fact that the surfactants they used were structurally very similar to the surfactants used by Hostettler, but both found them unpersuasive of nonobviousness on the grounds that (1) the affidavits compare the wrong things, (2) most of the comparisons are made in subjective terms like "good" and "coarse," and (3) the objective comparisons indicated that "other formulations changes known in the art may have as great or greater an effect than a change in surfactant."

## OPINION

Before entering upon a discussion of the substance of this case, one preliminary matter merits some attention. A week before this case was heard, counsel for appellants wrote informing us that an error had been recently (apparently, two days previously) discovered in one of the Rule 132 affidavits in this case.[2] According to their letter, the discovery of the error and the correction thereof did not alter appellants' positions about the issues to be decided by the court, but the error was brought to the court's attention "in view of the duty possibly imposed on appellants by Precision [Instrument Mfg.] Company v. Automotive [Maintenance Machinery] Company, 324 U.S. 806 [65 S.Ct. 993, 89 L.Ed. 1381] (1945)." At oral argument, the solicitor conceded that the error was not material and stated that he had no objection to

the court's being informed of the error, although he reminded us that the supplementary affidavit correcting the error was not part of the record before us.

■ As the solicitor implied, the decision of this court in patent cases can be based only "on the evidence produced before the Patent Office," 35 U.S.C. § 144, which does not include appellants' supplementary affidavit in this case. However, counsel for both parties having agreed that the error and its correction are not material to the issues on appeal, we see no reason why we cannot take note of the correction and proceed to the resolution of those issues without remanding the case and without leaving appellants and their attorneys open to a possible future charge of having dealt with this court with less than complete candor.

### I. The Section 102 Rejection

■ The section 102 rejection in this case can be sustained only on the theory that Hostettler expressly incorporates *a particular part* of Bailey by reference. If it would require combining some other part of Bailey, not clearly referred to by Hostettler, so that the two references are being used to show obviousness to one of ordinary skill in the art, the two references together simply cannot constitute an "anticipation" in the technical sense of that term in patent law. Pat. L.Persp., § A.1[1], Dev.A.1[1]–10 (Nov. 1970].

Hostettler teaches the use of a large number of classes of siloxane surfactants, one of which differs significantly from appellants' only in that he states

---

2. An affidavit which accompanied the letter explained that the affiant was also the nominal author of an affidavit in the record in this case and that, while reviewing the original notebook entries from which his previous affidavit had been prepared by appellants' then attorney, which review was made in preparation for a conference with appellants' present lawyers, he had "noted for the first time that the references in said affidavit to stannous octoate appearing in paragraphs 7, 25, 26 Table I, and Table II thereof are erroneous in that my

original notebooks show that I had used the tin catalyst identified in the notebooks as 'T-12' which was not stannous octoate." The affidavit then goes on to explain how the error must have been made in decoding the nomenclature "T-12" and why the affiant did not notice the error when he read the affidavit before signing it ("because I was so used to working with stannous octoate"). According to the new affidavit, the catalyst he actually used was dibutyl tin dilaurate, the same catalyst used by Hostettler.

that in the expression $(C_nH_{2n}O)_z$, "n is an integer from 2 to 4 denoting the number of carbon atoms in the oxyalkylene group; and z is an integer having a value of at least 5 and denotes the length of the oxyalkylene chain." Thus, Hostettler refers to oxyethylene (n=2), oxypropylene (n=3), and oxybutylene (n=4) but does not specifically disclose the particular ratios of oxyethylene to oxypropylene to oxybutylene groups recited in appellants' claims,[3] nor does it even indicate that the chains *can* consist of mixtures of different kinds of oxy-alkylenes.

However, some pages later, after setting forth a number of other surfactants, Hostettler indicates that:

> The above-described siloxane-oxyalkylene block copolymers can be prepared in accordance with the procedures described and claimed in the copending application of D. L. Bailey and F. M. O'Conner, Serial No. 417,-935, filed December 14, 1953.

The Bailey et al. application there referred to is now the Bailey et al. reference patent, and Example I(a) of Bailey discloses how to make a siloxane-oxyalkylene block copolymer of this type which the board found, "On conversion to a molar basis," to contain approximately 17 oxyethylene units and 13 oxypropylene units.

Appellants have conceded that Bailey Example I(a) "describe[s] a copolymer of the type claimed by appellants," but they argue that it is not one of "The above-described siloxane-oxyalkylene block copolymers" referred to in Hostettler because Hostettler "does not disclose copolymer surfactants in which the oxyalkylene groups are a mixture of oxyethylene and oxypropylene units * * *." Therefore, appellants argue, Example I(a) is not a part of Bailey which is incorporated into Hostettler by reference. The solicitor, on the other hand, argues that Hostettler's disclosure "that 'n' in the $(C_nH_{2n}O)_z$ group * * *

is an integer from 2 to 4 * * * includes a mixture of oxyalkylene units." Therefore, the solicitor argues, the surfactant copolymer in Example I(a) of Bailey is "within the ambit" of Hostettler's surfactant formula, and Hostettler's subsequent statement that the "above-described siloxane-oxyalkylene block copolymers can be prepared" according to the procedures of Bailey is effective to incorporate Example I(a) of Bailey into the Hostettler reference.

While we must concede that the matter is not free from doubt, on balance we agree with appellants that the language "n is *an* integer from 2 to 4" (emphasis ours), coupled with the reference to Bailey, would be taken by those skilled in the art only to indicate that Bailey taught how to make surfactants of this general type in which the oxyalkylene chains were composed entirely of one type of oxyalkylene and would not expressly indicate that the other compounds which Bailey also teaches how to make could also be employed as surfactants in Hostettler's process. Compare In re Lund, supra fn. 1, 376 F.2d at 988–90, 54 CCPA at 1370–72. Accordingly, we will not sustain the rejection under 35 U.S.C. § 102.

## II. *The Section 103 Rejection*

However, despite the fact that we agree with appellants that the subject matter they are now claiming was not anticipated by the Hostettler-Bailey combination reference, we think that the Patent Office has made a strong showing of prima facie obviousness, because, to paraphrase the board, it would not have been necessary for one skilled in the art to have gone any further than another part of Bailey to find the specified proportions of the appealed claims. With the discerning eye of hindsight, it certainly seems that it would not have required much skill in the art to realize that other, very similar, siloxane-oxyalkylene block copolymers, which Bailey also taught how to make, could also be

---

3. There are no oxybutylene groups recited in the methods of the appealed claims.

used in Hostettler's process for making polyurethane foams.[4]

Appellants rely on two arguments to rebut this prima facie obviousness. First, they assert that their two Rule 132 affidavits establish that reactions employing their relatively small class of surfactants "consistently gave smoother, finer celled foams of better appearance and often of improved height * * * with a plurality of reactants, catalysts and blowing agents" as compared with reactions employing surfactants taken from Hostettler's disclosure, and that, for the two runs in which these properties were compared, their surfactants also produced foams with improved tensile strengths and elongation characteristics. Second, they note (1) that, although

> A part of the Hostettler grandparent application concerning the siloxane-oxyalkylene copolymers (R–399– 405) is almost an exact copy of a portion of the Bailey et al. disclosure (R– 333–334) and both have the same assignee, * * * the Hostettler grandparent application left out those portions of Bailey et al. which relate to siloxane-oxyalkylene copolymers in which the ( $C_nH_{2n}O$ )$_z$ groups have both oxyethylene and oxypropylene units * * *

and (2) that "the main portion of the subject matter filed by Hostettler subsequent to his grandparent application is directed precisely to the use of the specific surfactants defined in the claims here on appeal."[5] These facts, they argue, are evidence that the subject matter of their claims was not obvious to Hostettler, whom they dub "a person of at least ordinary skill in the art," and therefore are some evidence that the subject matter of their claims was not "obvious" in the legal sense to the mythical men of ordinary skill in the art at the time they made their invention.

The relevant portions of the two lengthy Rule 132 affidavits have been marshaled very effectively in tables filling four pages of appellants' main brief. We do not deem it necessary to reproduce those tables here, but we will describe them briefly. Appellants have compared polyurethane foams produced by the one-shot technique employing the surfactant recited in their narrow claims (i. e., a siloxane-oxyalkylene copolymer having chains consisting of 17 oxyethylene units and 13 oxypropylene units) with polyurethane foams produced by the one-shot technique employing surfactants taken from Hostettler (i. e., siloxane-oxyalkylene copolymers having chains consisting solely of oxyethylene units or solely of oxypropylene units[6]). The runs are divided into seven groups, allowing for variations in specific diisocyanate and polyol reactants, blowing agent (i. e., water and fluorocarbon), catalysts (i. e., both an amine catalyst and dibutyl tin dilaurate, the catalyst used by Hostettler), and comparison surfactants (i. e., a pure oxypropylene chain surfactant, two different pure oxyethylene chain surfactants, and a physical mixture of a pure oxypropylene and a pure oxyethy-

4. The Bailey reference itself is totally silent regarding any use of its copolymer materials in the manufacture of polyurethane foams.

5. It may be of interest, though it has not influenced our decision in this case, that Hostettler denominated both of the successor applications to the present reference continuations-in-part.

6. The examiner noted that the surfactants representing appellants' invention and the surfactants representing Hostettler's teachings in one of the affidavits differed in that the former had an ethyl group attached to the left-hand silicon while the latter had a methyl group in the same place. The board did not mention this point, but the solicitor has argued that the difference makes the runs in that affidavit "not comparable." We must admit that this difference does detract from the weight to be accorded appellants' affidavit. However we agree with appellants that homology may be used *by* an applicant as well as *against* him and that, absent some reason to suspect that the small difference in these structures would affect the properties of the compound, the difference does not detract significantly from the strength of appellants' comparisons.

lene surfactant). The resulting foams are compared as to foam appearance, cell appearance, and foam height in the results taken from one affidavit and as to skin appearance, cell appearance, foam appearance, tensile strength, and percent ultimate elongation in the results taken from the other. In every group, the results employing appellants' surfactants are characterized by words such as "Good" (for foam appearance) and "Fine texture—Open" (for cell appearance),[7] while the results employing the surfactants taken from Hostettler's disclosure are characterized by words such as "Poor, Collapsed" (for foam appearance) and "Large, Course" (for cell appearance), and, in the two groups comparing skin appearance, the foams made with appellants' surfactants are said to have been "Smooth" and "Very smooth," respectively, while the foams made with Hostettler's surfactants are said to have been "Rough, Potted" in both cases. In four of the five groups where foam height was measured, the foams made with appellants' surfactants were higher than the foams made with Hostettler's, and, in the two groups in which tensile strength and percentage ultimate elongation were measured, the foams made with appellants' surfactants were significantly stronger than the foams made with Hostettler's surfactants.

The board held that appellants' Rule 132 affidavits were "not demonstrative of unobviousness" for what we take to be three separate reasons. First, they thought that appellants had compared the wrong things, primarily because in only two of the comparison groups were appellants' surfactants compared with Hostettler surfactants having the same molecular weight. While appellants certainly did not isolate every possible variable and demonstrate that substitution of their surfactants invariably led to a superior result, we think their show-

ing was adequate for an ex parte case absent any reason to expect a different result with some other set of variables. Compare In re Miller, 441 F.2d 689, 58 CCPA (1971). Second, the board objected to the use of subjective terms like "good" and "coarse" in the comparison on the ground that they are "susceptible of varying interpretations." Again, although we agree that objective comparisons are generally to be preferred to subjective comparisons, we cannot agree that comparisons made in such terms can be completely ignored, nor that they are, for that reason alone, entitled to little weight where the Patent Office has not suggested a practicable objective standard for measuring the same variable. Furthermore, in this case appellants submitted specimens of cellular polyurethane foams made as described in one of the affidavits, the Patent Office therefore had the opportunity to verify the appellants' assertions therein to the extent possible with the limited technical facilities available there, and it has not been suggested that the characterizations in appellants' affidavit do not seem to be accurate. Third, the board stated that what objective comparisons *were* made indicated that "other formulations changes known in the art may have as great or greater an effect than a change in surfactant." This last objection, we think, reflects a misapprehension of what appellants were trying to prove by their affidavits. It is true, as the board pointed out, that the differences in tensile strength and percentage ultimate elongation between each of appellants' foams and the Hostettler foam with which it was compared were no greater than the differences in tensile strength and percentage ultimate elongation between the two runs of appellants' foam inter se (which two runs differed only in the polyol used). However, we accept appellants' affidavits as estab-

---

7. In one case, the foam made by appellants' process is also said to suffer from an "Internal Split," which appellants admit is undesirable, and the solicitor has made much of this. While we agree that this detracts from the showing of unexpectedly advantageous results which appellants have made, we do not agree that it does so sufficiently to change the result in this case.

lishing that the resulting foams were always better when the surfactant recited in appellants' narrow claims was used than when one of Hostettler's surfactants was used, everything else being the same, even though some combinations of variables including their surfactant were not as good as other combinations of variables, not including their surfactant and also different by at least one other variable. This is enough, in our view, to be "demonstrative of unobviousness" in at least some of appellants' claims.

Appellants concede that all their objective evidence of non-obviousness concerns the specific surfactants recited in their narrow claims (i. e., those having 17 oxyethylene units and 13 oxyproplyene units), but argue that the ranges recited in their broad claims (i. e., those having 17 to 19 oxyethylene units and 11 to 15 oxypropylene units)

> * * * are reasonable and limited expansions based on the results of the showings and afford appellants protection which is appropriate under the circumstances even though the showings do not rigorously cover the ranges.

However, in view of the very strong showing of prima facie obviousness made by the Patent Office in this case, we would not feel justified, on the basis of their showing as to the surfactants, in permitting appellants to expand their claims beyond the specific surfactants which they have shown to give unexpected and advantageous results. Compare In re Landgraf, 436 F.2d 1046, 1050, 58 CCPA 929, (1971), and In re Byce, 378 F.2d 942, 945, 54 CCPA 1454, 1458–1459 (1967).

Appellants also argue that all claims which recite the amine catalayst should be held patentable because

> The fact that the secondary references describe the use of amines in various other polyurethane foam systems is of no particular significance since none of the secondary references provides a basis for concluding that appellants'

choice of surfactant and amine catalyst would produce unexpected results.

However, the "unexpected results" they are referring to are simply that Hostettler's method works with amine as well as tin catalysts; they do not argue that their data show that their amine catalysts produce *better* results than Hostettler's tin catalysts. They do argue that "the Hostettler disclosure * * * [leads] in the opposite direction [from amine catalysts]," but they show only that Hostettler taught that tin catalysts would work, not that he taught that amine catalysts would not. Under the circumstances, we agree with the solicitor that appellants have not rebutted the showing of prima facie obviousness the Patent Office made with respect to the case of appellants' amine catalysts.

There remains one final argument, which the solicitor presses with great vigor and for which he finds some support in the board's opinion, as to why appellants are not entitled to their claims even if the claims are found to be nonobvious in view of the prior art. This argument is that appellants' application states only that the particular surfactants recited in the appealed claims are "preferred" and does not indicate that the choice of these particular surfactants, as opposed to others appellants disclosed and formerly claimed, is "critically significant." He summarizes this argument as follows:

> In view of the prior adjudications by this Court, it is well established law that claimed features, proportions or values which are not *disclosed* as critical or critically significant and/or are described in the application only as being merely *referred* "cannot be considered as critical", i. e., patentability cannot be predicated thereon. In re Gardiner, 171 F.2d 313, 36 C.C.P.A. 748, 751; In re Honnig, 193 F.2d 191, 39 C.C.P.A. 740, 743; In re Bourdon, 240 F.2d 358, 44 C.C.P.A. 740, 743; In re Shepard, 319 F.2d 194, 50 C.C.P.A. 1439, 1445.

Appellants concede that, as the result of the vicissitudes of prosecution, they are now claiming much less than they originally did and that, in fact, what they are now claiming was originally only the preferred class within much broader claims, but they argue that the essential question in cases of this sort is whether the inventor has, in fact, rebutted any prima facie obviousness with objective evidence of non-obviousness and not whether his *original application happens to use the "correct" modifying adjectives (i. e., "critical" rather than "preferred")* to describe the subject matter eventually claimed.

Actually, this court in In re Bourdon and In re Shepard said only:

As was held in In re Gardiner, 171 F.2d 313, 36 C.C.P.A. (patents) 748, values which are described in an application only as being preferred cannot *ordinarily* be held to be critical. 319 F.2d at 199, 50 C.C.P.A. at 1445; 240 F.2d at 360, 44 C.C.P.A. at 743. [Emphasis ours.]

Furthermore, we agree with appellants' argument that

It is quite clear from the Shepherd [sic] and other decisions cited by the · Commissioner that the Court did not refuse to consider or give appropriate weight to affidavits because the essential novelty of the claimed subject matter was disclosed in the application only as "preferred." Rather after a complete study of the facts the Court found that the differences between the prior art and the claimed invention established by the showings made were not sufficient to establish unobviousness and patentability. In other words, the showings were found to be inadequate.

■■■■■ However, regardless of what this court may have *said* in the past, it is now our view that, in those cases where the applicants have attempted to rebut a showing of the prima facie obviousness of the subject matter claimed by the introduction of objective evidence of non-obviousness, both we and the tribunals of the Patent Office *must* give full consideration to the applicant's evidence and reach a decision on the question of non-obviousness on the basis of the relative strength of the applicant's showing and the prima facie case made by the Patent Office. In re Orfeo, 440 F.2d 439, 441, 58 CCPA (1971); Graham v. John Deere Co., 383 U.S. 1, 17–18, 86 S. Ct. 684, 15 L.Ed.2d 545 (1966). Appellants' evidence may not be disregarded simply because of the manner in which the now claimed processes were denominated in the original application. To rule otherwise would let form triumph over substance, substantially eliminating the right of an applicant to retreat to an otherwise patentable species merely because he erroneously thought he was first with the genus when he filed. Cf. In re Ruff, 256 F.2d 590, 597, 45 CCPA 1037, 1049 (1958). Since the patent law provides for the amendment during prosecution of *claims,* as well as the specification supporting claims, 35 U.S.C. § 132, it is clear that the reference to "particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention" in the second paragraph of 35 U.S.C. § 112 does not prohibit the applicant from changing what he "regards as his invention" (i. e., the subject matter on which he seeks patent protection) during the pendency of his application. Cf. In re Brower, 433 F.2d 813, 817, 58 CCPA 724 (1970) (fact that claims in continuation application were directed to subject matter which appellants had not regarded as part of their invention when the parent application was filed held not to prevent the continuation application from receiving benefit of parent's date).

### DECISION

For the foregoing reasons, the rejection of claims 11 and 26 is reversed and the rejection of claims 6, 8–10, 19–21, and 23 is affirmed.

Modified.

BALDWIN, Judge (concurring).

While I adhere to the bulk of the court's opinion, I wish to express my disagreement with that section which finds error in the rejection of claims 6, 20 and 23 (not reciting any catalyst) under 35 U.S.C. § 102 as anticipated by the Hostettler reference. I would affirm this rejection because I believe the whole of the Bailey disclosure relating to the preparation of siloxane-oxyalkylene block copolymers is incorporated by reference into Hostettler.

The logic of the majority approach fails, I believe, to take into consideration adequately the fact that, on this record, there is no reason to believe that one of ordinary skill, reading Hostettler's disclosure, would know how to make *any* of the critical block copolymers. Accordingly, *whether or not* that mythical man would *presume* from Hostettler's primary disclosure that mixtures of oxyalkylenes in the copolymers were not contemplated, upon going to Bailey as instructed he would find out conclusively that such mixtures were also included. As the board here indicated, therefore, the effective disclosure of the Hostettler reference clearly includes utilization of the copolymer described in Example 1(a) of Bailey as the surfactant in the Hostettler process.